EDWARD BREDELL AND ALFRED CHADWICK, TRUSTEES UNDER
THE LAST WILL OF GEORGE COLLIER, DEC'D, Respondents, *v.*
SARAH A. COLLIER *et al.*, Appellants.

*Construction of Will— Vesting — Mixed Estate consisting of Realty and Personalty,
Rules applicable to the former prevail—Case considered under both aspects—Trust
—Discretionary Powers of Trustees—Discretion subsequent—Condition imposing
extra-judicial duty on Court, not binding.*

The testator George Collier, Sen., by his will, after bequeathing various spe-
cific legacies, and making provision for his wife in lieu of dower, by the
17th clause devised and bequeathed the residue of his estate—which was
very valuable and consisted principally of realty—to trustees (who were
also appointed executors) in trust, for the uses and purposes therein speci-
fied. After prescribing the powers and duties of the trustees as to the man-
agement, improvement and disposition of the estate, and providing for the
education, maintenance and advancement of his children, all of whom he
names, he adds : "And when my said son Dwight shall attain the age of
twenty-one years, I wish and require my said executors and trustees im-
mediately to settle up my estate, and divide the same out among my said
children as hereinafter mentioned, as far as it may be practicable." Each
division or partition was to be submitted to the St. Louis Probate Court for
its approval, and if approved was to be binding and conclusive. He then
continues : "In making partition as aforesaid, I wish and direct that each
and all my said children shall receive equal portions or shares, as my affec-
tion and parental regard for them all know no distinction. But if, from
Providential visitation or unforeseen casualty, or their own bad conduct—
none of which contingencies or misfortunes I hope may ever intervene—
my said trustees shall think it right and proper and safest and best, under
all the circumstances, to make any difference or distinction among my said
children or any of them, in making any of the divisions or partitions as
above provided for, they are hereby vested with full power and authority
to do so, as fully and to all intents and purposes as I myself could do if liv-
ing at the time; such discrimination always, however, to be subject to the
approval of the said Probate Court as aforesaid. But if all my children shall
be worthy, no distinction or difference shall be made among them merely
because one or some of them may be deemed by my said trustees more
worthy than the others of them. The shares or portions of my estate which
shall be thus set apart to my children shall be held by them in their own
several rights under the full and perfect legal title—to them and to their
heirs, executors, administrators, and assigns, forever." All the children
named in the said clause survived the testator ; but Henry, the youngest,
(an infant), and George, Jr., an adult, died afterwards and before the said
son Dwight had become of age. George, Jr., died testate, and leaving a
widow but no children. *Held*, on petition of the trustees for the advice and

directions of the court, that George and Henry took vested and transmissible estates under the will.

The law favors the vesting of estates; a devise or bequest therefore in favor of a person *in esse* simply (i. e. without any intimation of a desire to suspend or postpone its operation) confers an immediately vested interest.

Where words of futurity are introduced into the gift, the question arises, whether the expressions are inserted for the purpose of protracting the vesting, or point merely to the deferred possession or enjoyment.

This being a mixed gift or devise, the rules applicable to realty control.

The doctrine of Boraston's case, 3 Coke, 19, recognized and applied.

But no essential difference would be found to exist if the gift concerned personalty exclusively. Directions to pay, to transfer, to divide and partition, import a gift, unless restricted by some inconsistent limitation or condition. The constitution of this trust leads irresistibly to the inference that a gift was intended, and that the gift to the trustees was for the benefit of the children only.

The postponement of the division and partition being apparently more for the benefit and convenience of the estate than for any consideration personal to the devisees, could not prevent the vesting.

There is no limitation over of the respective interests, showing any purpose in the testator that the children should not receive their shares at all events. The consequence of holding that the devisees took no immediate interest would be, that, if any of them died before the period of division leaving children, those children would be wholly unprovided for. Parents are not generally actuated by such intentions, and, unless apparent and unmistakable, they will not be ascribed to them.

It is immaterial that the money is not to be paid or the property divided till a future period. It is scarcely distinguishable from a bond for the payment of money at a future date. It is *debitum in presenti*, though *solvendum in futuro*.

The children take by virtue of the will, and not by appointment under the power conferred on the trustees. The action of the trustees is not a condition precedent to the vesting of the estate in the devisees, and whatever power they may have to make a difference or distinction on account of casualty or bad conduct, is a discretion subsequent; nor is there anything to indicate that the testator intended to exclude a child from partition by death. The death of two of the children prevents the trustees from making any distinction or difference as to them, and so far as they are concerned there is nothing to evoke the power given.

The condition that the action of the trustees should be approved by the Probate Court is unimportant. The duty imposed upon the court is wholly extra-judicial, and its sanction could impart no validity to the proceedings. If the trustees neglect or refuse to act, or abuse their trust, they are amenable to a court of equity, which will always assert its jurisdiction in such cases.

*Execution of Testamentary Power.*—The will of G. C., Jr., contained the following clauses: "2. I give and bequeath to my dearly beloved wife, Harriet K.

Collier, the entire usufruct of my estate, real, personal and mixed, of every description, wherever situated at the time of my death, so that she may enjoy the sole and entire revenue and income thereof during her life. 3. I give to my said wife the absolute right to dispose of one-half of my said property at her decease, by testamentary disposition, as she may deem right and proper." The disposing part of the will of Harriet K. Collier was as follows: "I give to my dear mother, Mary Kearny, the entire property of which I die possessed, wherever situated, real, personal and mixed, of every character and description, including any and all rights acquired by me under the will of my late husband, to enjoy the sole and entire use of the same during her life," &c. *Held*, that here is a direct reference to the power, and in a manner so explicit as to leave no room for doubt as to the intention, and that this was a valid and operative execution of the power.

*Appeal from St. Louis Circuit Court.*

The facts of the case and the circumstances under which the questions arose sufficiently appear in the foregoing syllabus and the opinion of the court. As the principal questions involved the construction of the 17th clause of the testator's will, it is here copied:

"17th. I give, devise and bequeath all the rest, residue and remainder of my estate, not hereby otherwise disposed of, whether real, personal or mixed, of whatever kind and wheresoever situated, unto my said wife Sarah A., my nephew Edward Bredell, and my said friend Alfred Chadwick, as trustees. To have and to hold the same unto them, the said Sarah A., Edward, and Alfred, as joint tenants and not as tenants in common, and unto the survivors or survivor of them, and to the heirs, executors, administrators and assigns of such survivor forever—as trustees in trust for the uses and purposes herein expressed. Said trustees are authorized and empowered to sell and convey any and all the real estate I may die seized or possessed of, lying or being outside of the said city of St. Louis with its present limits, and also to sell or exchange and convey fractions or parcels of lots lying inside of said city whenever they deem it prudent to do so for the interest of my estate, and to take the proceeds thereof and to apply and re-invest the same for the purposes and objects specified in this will and in the manner hereinafter more specifically mentioned as to the incomes of my estate. The property mentioned above in this devise and bequest lying or being in said city of St. Louis, and the proceeds that may be realized under the last clause, and also all

the property hereby vested in my said trustees, I desire and direct them to keep together as one entire whole (until disposed of as hereinafter provided) and to be managed accordingly as such by them. They are to have the full possession thereof, and to improve, control, manage and dispose of the same, and to receive the issues, incomes and profits thereof, as fully as I could do if living; which issues and profits they are fully authorized and required to invest again as a part of my estate, either in real estate (if possible in the said city of St. Louis) or in good and secure stocks—say of political or municipal corporations, but not in the stocks of any private trading or banking corporation. I desire and will that all my children shall be well educated and taken care of according to the best judgment of my said trustees. And the expenses of the education, the clothing and the medicines of all my children, so long as they shall severally live with my said wife as a part of the family as above mentioned, and also of their entire maintenance and support, if it shall happen that they or any of them shall cease to live with my wife as aforesaid, so soon as that event shall transpire, shall be paid and defrayed by my said executors, and considered and treated as a part of the expenses of my estate and of the management thereof. In addition to the said George and Mary, already mentioned, I have the following children: Margaret D., John P., William B., Maurice Dwight, Thomas F., and Henry Collier. And it is my will and desire that as, and whenever any of my children (prior to the first division or partition that shall be made as hereinafter provided) shall come of age, or become married or settled in life, my said trustees shall advance to any such of them any such amounts of money or property as in their judgment and discretion shall be right and proper, keeping correct accounts thereof. And when my said son Dwight shall attain the age of twenty-one years, I wish and require my said executors and trustees immediately to settle up my estate, and divide the same out among my said children, as hereinafter mentioned, as far as it may be practicable. And if division thereof cannot, without detriment and loss, be then at once effected of the entire estate, I desire and direct that it may be made so far as it can be accomplished; and then, so soon thereafter as practicable, I require a further division to be made; and so on, from time to time, until the whole estate shall be settled and partitioned among my children. And whenever any division or partition shall be made as aforesaid, I require that my said

executors and trustees shall report the same to the Probate Court of said county of St. Louis for its approval, and if the same shall be approved of by said court, then the same shall be binding and conclusive; and so of any and all divisions that my said executors and trustees shall make as aforesaid. In making partition as aforesaid, I wish and direct that each and all my said children shall receive equal portions or shares, as my affection and parental regard for them all know no distinction. But if from providential visitation or unforeseen casualty, or their own bad conduct—none of which contingencies or misfortunes I hope may ever intervene—my said trustees shall think it right and proper and safest and best, under all the circumstances, to make any difference or distinction among my said children or any of them, in making any of the divisions or partitions as above provided for, they are hereby vested with full power and authority to do so, as fully and to all intents and purposes as I myself could do if living at the time; such discrimination always, however, to be subject to the approval of the said Probate Court as aforesaid. But if all my children shall be worthy, no distinction or difference shall be made among them merely because one or some of them may be deemed by my said trustees more worthy than the others of them. The shares or portions of my estate which shall be thus set apart to my children shall be held by them in their own several rights under the full and perfect legal title—to them and to their heirs, executors, administrators, and assigns, forever. But should my said executors and trustees so determine, they are hereby authorized and empowered to put the share or shares so set apart as aforesaid to any one or more of my said children, in trustees for their sole and separate use and advantage. When the first division or partition as above provided for shall be made, as I have already given to George and Mary an absolute portion or legacy of fifty thousand dollars each, I will and desire that each one of my other children (subject to the discretionary power on that point herein vested in my said trustees) shall first receive, in order to put them on an equality with said Mary and George, a sum or portion which shall be equal to fifty thousand dollars, together with compound interest thereon at the rate of six per cent. per annum, computed from the day when the said portions of Mary and George shall have been received by them, down to the time of such division. That is to say, I wish compound interest at the rate of six per cent. to be computed upon the fifty-thou-

sand-dollar portions I have given to Mary and George, down to the time of the first division; and when the aggregate of the principal of fifty thousand dollars and of the compound interest thereon at the rate aforesaid shall be ascertained, I wish an equal amount first of all to be given (subject to the discretionary power on that point above vested in my said trustees) to each one of my other children. And I wish and require that the same thing be done and the same course be pursued in regard to any advances that may be made under the foregoing provisions of this will to any of my children on coming of age, or marrying, or becoming settled in life. And when all my said children shall thus be made *equal* in respect of advancements, or in the portions of my estate received by them respectively, then in the partitions or divisions among them above provided for, they shall all receive equal shares and proportions of my estate, until the whole shall be divided out among them; subject, however, to the power of discriminating among *them* vested in my trustees as above set forth. After the partition as aforesaid shall first be made, then the annuity hereinbefore given to my said wife, instead of being paid by said executors, shall be paid *pro rata* by and out of, and be charged upon, the portions set apart to her children and so much as shall have been paid to Mary and George over and above the fifty-thousand-dollar legacies given to them as aforesaid, which are never to be charged with any part of the aforesaid annuities."

The questions were submitted to the court upon the printed arguments of counsel.

*A. Hamilton* and *R. M. Field*, for appellants.

We insist that all of the children having survived the testator, their interests vested at his death; and that this result not only was intended by him, but is in accordance with the plain and natural construction of the will.

It may be convenient, at the outset, once for all, to refer to certain familiar rules and principles of construction, all more or less applicable to the case.

The well-known formula, that the intention of the testator is to govern in the construction of his will, has found its way into our statute law. To this leading principle all other rules of construction are subordinate and auxiliary.

The policy of the law and the rules of interpretation require *that* estates in all cases should be held vested rather than contingent whenever it can be done without perverting the language of the devise—1 Jarm. on Wills, 726; Smith on Exec. Interests, 73; Vanhook v. Vanhook, 1 Dev. & Bat. 589; Fuller v. Winthrop, 3 Allen (Mass.) 60; Burd v. Burd, 40 Pa. 182. Accordingly, where the language of the will renders it doubtful whether it was the intention of the testator to postpone the vesting, or merely the time of payment or distribution, it will be held that the interest is vested—Eldridge v. Eldridge, 9 Cush. 516; Furness v. Cox, 1 id. 134.

This policy is especially applicable to devises or legacies to children, the natural objects of a testator's bounty, on the presumption that he naturally desires their families to succeed to their interests—per Gaston, J., in Vanhook v. Vanhook, 1 Dev. & Bat. 587, cited with approbation in Underwood v. Dismukes, Meigs, 308.

Another rule is, that in construing a will possible as well as actual results are to be attended to; that is to say, the construction must be with reference to circumstances which might have occurred as well as if they had occurred—1 Jarm. on Wills, 766–8; Harcourt v. Harcourt, 26 Law Jour. (Eq. Series,) 538.

I. It will be seen that the 14th and 17th clauses form but one scheme. A synopsis of these will demonstrate that the plan of the testator was to postpone not the vesting but only the final settlement and distribution of his estate during a certain time, for the benefit and convenience of his estate and family, and the education, support and advancement of his children.

By the 14th clause he makes provision for his wife. He devises and bequeaths to her all his household and kitchen furniture, plate, carriages and horses, and all the personal property in the use of his family for ordinary household purposes, including all his slaves except two (who are named), and certain debts due him; and also the use and enjoyment, free from all rent and other charges, of the family mansion,

so long as she may see fit to occupy the same as a home or place of residence. But if, from the growth of the city, or other causes, she wishes to cease to occupy the said premises as a home or residence, he authorizes and requires his executors, so soon as she shall signify her desire to surrender up the premises to them, to pay to her, as she may require it, the sum of thirty thousand dollars, to be invested in a house and lot, for a residence and home for herself, to be held by her in fee.

In addition to this, he gives to her an annuity of eight thousand dollars, which is to be paid to her during her widowhood. This annuity, during the period of the postponement, is to be raised "principally out of the income" of the estate, and is made subject to the condition, that his wife *shall keep the family together without any charge to any of the children, except for clothing, medicines, and tuition.* In the event of her marriage, the annuity is reduced to six thousand dollars; but she is then *released from all obligation to support any of the children.* The provision for the wife is declared by the testator to have been made upon the distinct agreement between them, that it was to be in satisfaction of her dower.

Having thus provided a home, and, as he had reason to believe, a satisfactory and permanent support for his wife, the only remaining and exclusive objects of his solicitude and bounty were his children. He accordingly addresses himself to the duty of providing for them. By the 17th clause, the entire residue of his estate is given to his children, through the intervention of trustees. A trust term is created, during which the title, as well as the possession both actual and legal, is vested in and given to the trustees, with full and ample power to sell or exchange certain portions of the realty and re-invest the proceeds, and to improve, control and manage the whole property, and to receive and invest the issues, income, and profits. The estate is directed to be kept together as an entirety until the period of division. Noticing that no provision had as yet been made for the ex-

penses of the education, clothing and medicines of any of the children, and foreseeing that the support provided for them as a part of the household might fail from several causes—that is to say, either the marriage or decease of his wife, or their ceasing to live with her as members of the family—he therefore directs that all the children shall be well educated and taken care of, and that the expenses of their education, clothing and medicines, so long as they constitute a part of the family, and also of their maintenance and support in the event of their ceasing to live with his wife, shall be paid out of his estate. Prior to the division advances are to be made to them as they become of age, or are married or settled in life. Having bequeathed to Mary and George fifty thousand dollars each, absolutely, the others are to receive a like sum, with compound interest at six per cent., to put them on an equality in this respect with Mary and George. All advances are to be equalized, and are to be brought into the final division or distribution. When his son Dwight becomes of age the trust is to cease, the estate is to be settled up and divided out amongst his children immediately, if practicable; and if not, further divisions are to be made from time to time until the whole estate is settled and partitioned amongst them. Each division or partition is made subject to the approval of the St. Louis Probate Court, and if approved, is to be binding and conclusive. The division is directed to be, not amongst *the* children, or *such* of them as may then be living, but amongst them all — all being equally and the equal objects of his bounty and affection. His language is—"In making partition as aforesaid, I wish and direct that each and all my said children [having previously named them with particularity] shall receive equal portions or shares, as my affection and parental regard for them all know no distinction." He then adds, "But if from Providential visitation, or unforeseen casualty, or their own bad conduct—none of which contingencies or misfortunes I hope may ever intervene—my said trustees shall think it right and proper, and safest and best, under all the circumstances,

to make any difference or distinction among my said children, or any of them, in making any of the divisions or partitions as above provided for, they are hereby vested with full power and authority to do so, as fully, and to all intents and purposes, as I myself could do if living at the time;—such discrimination always however to be subject to the approval of the said Probate Court, as aforesaid. But if all my children shall be worthy, no distinction or difference shall be made among them merely because one or some of them may be deemed by my said trustees more worthy than the others of them." Authority is also given to the trustees, should they so determine, to put the shares of any of the children in other trustees, for their sole and separate use and advantage. On the first division the annuity to his wife is no longer to be paid out of the estate, but is made a direct charge, *pro rata*, upon the several shares set apart to the children, the legacies of $50,000 each, given to Mary and George, not being subject thereto.

Looking at the case thus, apart from all general reasoning and technical rules, with reference more especially to the actual intention of the testator, and considering the relations of the parties, and his very obvious purpose of benefitting his family and children, as well as the elaborate care manifested to put all of the latter upon a footing of perfect and exact equality in all respects, it would seem impossible to doubt that his intention was, as we have said, to confer upon each and all of his children vested interests at his decease, and to postpone only the final settlement and distribution of his estate.

Waiving for the present the provisions for advancements and education and maintenance (all which, as will be shown in another connection, are indications of immediate vesting), that the testator intended the shares to vest at once at his decease, and regarded them as vested, is evident too from his directions as to the annuity. The estate, it will be observed, was to be settled up and divided out at the time indicated, and on the first division the annuity was no longer to be

paid out of the estate, but was made a direct charge upon the shares to be allotted in severalty under the division. It was distinctly understood between the testator and his wife that the provisions of the will, so far as she was concerned, were perfectly satisfactory to her, and that she would accept them. But if the shares were not intended to be vested—if, for instance, the death of all the children before the time of distribution, or any other condition, would have defeated them entirely, it is not easy to perceive how either the testator or his wife could have regarded such a provision as a convenient and suitable arrangement for her support.

It will be seen that here we are still on the intention of the testator, and as to how he himself contemplated the interests. It is nothing to the purpose therefore that the widow renounced the provisions of the will; and it may be conceded that the charge would have followed the shares into whose hands soever they might have come. But we insist that the testator could scarcely have meant that his wife's support should be made to depend in the first instance, and solely indeed, so far as he has said anything upon the subject, upon a plan or scheme of distribution which might fail altogether; or, in other words, upon what at best were intended as so many *mere contingencies*.

But there is an interpretative clause which is not without its influence on the question as to the testator's intention. After directing that "each and all of my *said* children shall receive equal portions or shares," and conferring upon the trustees the power of discriminating between them, with the precautionary suggestion mentioned as to its exercise, he adds, "the shares or portions of my estate which shall thus be set apart to my children shall be held by them in their own several rights, under the full and perfect legal title, to them and their heirs, executors, administrators, and assigns, forever." From this, it is clear that he noticed and understood perfectly what he had already done; that while he had given to the children the beneficial interest during the trust, yet still that the interest so given was technically equitable

only, and not legal, the title being in the trustees. He now declares that the shares acquired under the will shall be held by them "under the full and perfect *legal* title"; thus designating the legal in contradistinction to the equitable estate already vested, and clothing the latter with all the attributes of the former. More than this, the superadded phrase, "to them and to their heirs, executors, administrators and assigns forever," although superfluous and ineffectual in itself to enlarge the interests, has a direct bearing upon the question of vesting. As descriptive of the interests, it tends to show that they were intended to be absolute and vested; and is a complete refutation of the notion that the testator designed to preserve the property in his own family, or amongst his lineal descendants.

Then, too, the devise is residuary, and to the testator's children, the exclusive and equal objects of his bounty. These several characteristics favor the vesting.

In the recent case of Pearman v. Pearman, 33 Beav. 394, the M. R. says, "In residuary devises and bequests, the decisions show a strong inclination of the courts, in all cases where it is possible, to make the gift vested."

And in Leeming v. Sherratt, 2 Hare, 16, Vice Chancellor Wigram says, "If there is any case which declares, as an abstract proposition, that a gift of a residue to a testator's children, upon an event which afterwards happens, does not confer upon those children an interest transmissible to their representatives merely because they died before the event happens, I am satisfied that case must be at variance with other authorities."

Here the devise is to the children *nominatim*, as individuals, and not as a class, (Bain v. Lescher, 11 Sim. 397; Winslow v. Goodwin, 7 Met. 375,) and there is no clause of survivorship or other disposition of the shares of any who might die before the time appointed for the division. If the testator had intended to confer the benefit of survivorship, the 6th clause of the will shows that he knew how to accomplish that object. Nothing could be more directly hostile to his

intention than to limit the devise to such only of the children as might be living at the time of distribution. Unless his language, or the context, renders it necessary, the court will not interpolate or introduce into the will a clause or provision the effect of which would be to put the children under such a condition as that none should take unless they were living at the time of distribution, thus making contingent in their inception interests which otherwise would be vested. It would be an improbable intention to impute to this testator, who has expressed himself with such emphasis and so clearly upon the subject of equality amongst his children, whose will indeed teems with the idea of perfect equality, that those who might happen to live to the time of distribution, although having no families dependent upon them, should be preferred to such as might have died but the day previous leaving families needing support.

As the devise is to the children individually and not as a class, and there is no limitation over to survivors or other provision in case of the death of any of them before the time of distribution, if the shares did not vest at the death of the testator, not only is there a failure of the devise as to those originally intended for George and Henry, but as possible as well as actual results are to be looked to, (1 Jarm. on Wills, 766–8; 26 Law Jour., Eq., 538,) if all had died, there would have been an entire failure of the devise of the residue—Sohier v. Inches, 12 Gray, 387. Such a construction is not to be accepted unless imperatively required by the terms of the will. We have the authority of the Vice Chancellor in the case of Leeming v. Sherratt, just cited, for saying, that if George and Henry had left issue their claim would have been irresistible, although there is no clause substituting issue in the place of parents.

II. This is not the case of a mere power of appointment. It is not a devise or *gift* to the parties named to *give* to the children, or to such of them, and in such proportions, as they might see proper or as circumstances might in their judgment require. The estate is devised in trust, for all the chil-

dren, by name. The children are the *cestuis que trust* to the same extent precisely as if the devising clause were, in express terms, to their use—Booth v. Booth, 4 Ves. 399; Branstrom v. Wilkinson, 7 Ves. 421; Leeming v. Sherratt, 2 Hare, 16; Saunders v. Vautier, Cr. & Ph. 246; Patterson v. Ellis, 11 Wend. 259; Dundas v. Murray, 1 Ham. & M. 429. They take therefore under the trust, and not through the medium of the power, which is only the means of placing them in the possession of their shares. And equality of distribution is the standard fixed by the testator himself. True, he contemplates and provides for the happening of certain events—these are Providential visitation or unforeseen casualty, or the bad conduct of the children; and as to these, he expresses the hope that none of them may ever intervene. Death therefore, which is inevitable, could scarcely have been within his contemplation. Under these special circumstances, authority to discriminate is given to the trustees. But so anxious is the testator that his plan of equality may prevail, that he restricts this power of discriminating by declaring in substance that if all are worthy—that is to say, if their conduct does not bring them within the influence of the power, the trustees shall not indulge in any ideas of comparative merit, but shall treat all alike in that respect; and he subjects the exercise of this power also to the approval of the Probate Court. All of these two sets of children stood towards the testator upon an equal footing. The case therefore, in this particular, is totally unlike that in which a father is seeking by the provisions of his will, the reformation of an unworthy or profligate son, making his reformation a condition precedent to the vesting of his bounty; and it is scarcely necessary to add, that Providential visitations or unforeseen casualties were regarded as mere possibilities. The children were not required by the will to do anything in order to take their shares. The interests were vested, subject to this power of discriminating to be exercised under the circumstances and in the manner indicated by the testator. No one was to be excluded entirely, but all were to

receive something. Even supposing some of them, by their conduct or otherwise, to come within this power, the standard of equality as fixed by the testator himself would still remain untouched as to the others. The vesting cannot be affected by the fact that the proportions are indeterminate, nor is it material that the legal title is to be retained by the trustees until the time of distribution. From the very nature of the case, then, this power of discriminating is in effect but a *condition subsequent*, and can only operate as such in partial defeasance of the interests given. The power will be construed in conformity with the main purpose of the testator in creating the trust, and the court will strive as far as possible to place the objects of the testator's bounty upon the ground most favorable to the vesting, and as taking under the trust itself rather than under the exercise of the power, and will, if possible, affix to the latter such a limited construction as will render it in effect only a condition subsequent. Where a power of selection is given to trustees, the whole class will take a vested interest, subject to be divested by the exercise of the power; and if it is never exercised, the whole class will take equally. But both George and Henry having died, and there being no suggestion that they came within the scope of this power, as to them it is at an end—their interests became, in that respect, absolute.—Howland v. Howland, 11 Gray, 477; Wright v. Wright, 13 Eng. Law & Eq. 166; Ridgway v. Woodhouse, 7 Beav. 433; Hill on Trustees, s. p. 69, 79, 490–92; 1 Roper on Leg. 420; Cunningham v. Moody, 1 Ves. Sen. 174; Doe v. Martin, 4 T. R. 39; Burrough v. Philcox, 5 My. & Cr. 72.

If, then, it be urged, you cannot "divide out" amongst the dead, nor "discriminate" except between the living, and that therefore the implication is inevitable that the objects should be living at the time of distribution in order that their circumstances and qualifications in the particulars mentioned by the testator might be passed upon by the trustees, the answer is already given—here is a distinct substantive trust for the benefit of all the children equally, in the first instance,

not confined to *the* children or to *such* of them as might then be living—with no clause of survivorship in case of the death of any—where they take under the trust itself and not through the medium of the power, which is merely the machinery for putting them into the enjoyment of their interests—and where the *discretion* of the trustees is confined exclusively to fixing the shares, without any authority whatever committed to them to say who shall take. It is of the essence of a condition precedent that the devisee or legatee is to perform some act, or assume some position, required of him by the testator. Here, as we have said, nothing is directed to be done by the children to secure their interests under the will, and the court will not put them under a condition which the testator himself has not seen proper to impose.

III. The rule where, as in this instance, realty and personalty are blended in the same gift, and by words which create an immediate vested interest as to the realty, is, that the personal estate must be considered as vested also. This rule is especially applicable where, as in this case, the realty constitutes by far the greater portion of the property devised. —James v. Wynford, 1 Small & Giff. 59, 60; Weidman v. Bush, 4 Harris, 511; Raney v. Heath, 2 Pat. & Heath. 206; 1 Jarm. on Wills, 597.

How is it, then, as to the realty? It will be remembered that the devise is to trustees, for the children, with the direction to keep the property together as an entirety during the minority of one of the testator's sons, for the several purposes of raising an annuity for the wife, (the same being made, by the 14th clause, a charge upon the income,)—the education, maintenance and advancement of the children—and the benefit and improvement of the estate in the meantime. The title is vested in the trustees for a term of years, or during the whole period of the postponement. And when the said son arrives at age, the estate is to be settled up and divided out amongst all the children. Compressed into a single sentence, (which is more to our immediate purpose,)

it is a devise to trustees of the residuary estate, to be kept together for the benefit of the wife and family, the support, education and advancement of the children, and the benefit and improvement of the estate, until the tsstator's son Dwight shall become of age, when it is to be divided amongst the children.

The following cases and authorities show that this direction to divide does not denote the time of vesting, but only when the shares or interests shall take effect in possession or enjoyment; and therefore that all the children took vested and descendible interests.

Boraston's case, 3 Rep. 19.—Devise of land to A. and B. for eight years, remainder to executors till such time as H. should attain 21; and *when* he should attain 21, that he should enjoy the same in fee. It was held that there was a vested remainder in H.; that the legal construction was, a devise to executors till H. reached 21, remainder to him in fee; and that the remainder was no more contingent than in the common case of a lease for life or for years, remainder over; that the adverb *when* created no contingency, but merely denoted the time when H. should have possession.

There is no substantial distinction between the present case and that just cited; and it may be noticed here that as to real estate, the principle of that case is, that an intermediate interest carved out does not prevent the vesting, whether it be so carved out for the benefit of the devisee or for any other person, and whether it exhausts the whole intermediate rents and profits, or only a part. It is immaterial to what purposes they are applied.—James v. Wynford, 1 Sm. & Giff. 59, 60.

Doe v. Lea, 3 Term R. 41.—Here the testator devised the premises in question to certain persons, in trust, until M. L. should attain the age of 24, on condition that they should, out of the rents and profits, during all that time, keep the buildings in repair. He subsequently devised the same premises to the said M. L. upon and as soon as he should attain 24, and directed the trustees to surrender the premises

accordingly. M. L. died under 24. *Held*, that he took a vested and descendible interest.

And see Mansfield v. Dugard, 1 Eq. Ca. Abr. 195; Doe d. Haywood v. Whitby, 1 Bur. 228; Den d. Abrahams v. English, 2 Harrison, 290; Doe v. Moore, 14 East, 601; Doe v. Provost, 4 J. R. 61; Summers v. Burtis, 4 Edw. Ch. 728; Crosby v. Wendell, 6 Paige, 548; Roome v. Phillips, 24 N. Y. 465; Torrey v. Shaw, 3 Edw. Ch. 359; Winslow v. Goodwin, 7 Metc. 376; Johnson v. Valentine, 4 Sandford, 36; 1 Jarm. on Wills, 734–5, and cases cited in note; 2 Washb. Real Prop. 252.

The sentence commencing, "And when my son Dwight shall attain the age of 21 years," was intended only to fix a limit to the duration of the trust, which was then to cease.

If, then, our position is correct, that this aggregate mass is to be regulated by the rules applicable to real estate, these authorities (to which many others might be added) are conclusive.

IV. But, irrespective of the fact that this is a mixed gift, the result would be the same if it were a bequest of the personalty alone. The same general principles which regulate the vesting of real estate will be found applicable, to a considerable extent, to the personalty.

As to the effect of a simple limitation of time by the word "when," see May v. Wood, 3 Bro. C. C. 473; *Love v. L'Estrange*, 5 Bro. Parlt. Ca. 59; Monkhouse v. Holme, 1 Bro. C. C. 298; Booth v. Booth, 4 Ves. 399; Hanson v. Graham, 6 Ves. 246–7.

Where the words in a will are in the present tense, but the direction for the payment is in the future, the fair import of the language is that there is a present gift, to be paid thereafter. A direction in a will for a division of an estate amongst several persons, by the executor, is equivalent to a direction for the payment to the legatees of the respective shares; in such case the interest is vested, and is transmissible.—Tucker et ux. v. Bull, 1 Barb. (S. C.) 94, and authorities cited by the court. See also Clancey v. Dickey, 2

Hawks, 514; Everett v. Mount, 22 Georgia, 323; Perry v. Rhodes, 2 Murphy, 140; Childe v. Russell, 11 Metc. (Mass.) 16; Underwood v. Dismukes, Meigs, 299; Eldridge v. Eldridge, 9 Cush. 516; Burd v. Burd, 40 Pa. 182; Everett v. Everett, 29 N. York, 75–6; Snow v. Poulden, 1 Keen, 187; Saunders v. Vautier, Cr. & Ph. 246; Shattuck v. Stedman, 2 Pick. 467; Fairly v. Kleine, Pennington, 551; Guyther v. Taylor, 3 Ired. Eq. 323; Peckham v. Gregory, 4 Hare, 387.

The provisions for advancements and maintenance and education are indications of immediate vesting.—Vivian v. Mills, 1 Beav. 315; Harrison v. Grimwood, 12 Beav. 192; Davis v. Fisher, 5 Beav. 201; Underwood v. Dismukes, Meigs, 308; Everett v. Everett, 29 N. Y. 75–6; Torrey v. Shaw, 3 Edw. Ch. 359; Hodginson v. Barron, 2 Phil. 582.

It may be contended that here is no gift except in the mere direction to divide. If this were conceded, it would be of no special importance. The question in all such cases being one of substance rather than form, depends not so much upon the particular words in which the gift is expressed as upon the general tenor and scope of the whole instrument. Directions to pay, to divide, or distribute, import a gift, unless controlled by other parts of the will. But this is not the case of a mere trust, *uno flatu*, to divide. There is a prior substantive gift to the children through the intervention of trustees, and the time of distribution is disconnected from the gift by a separate sentence. In other words, the terms which look to the future are annexed simply to the distribution, and not to the gift itself. It is a trust for the children, *and* to be divided at the time indicated.—Smith on Exec. Inter. 148; Perry v. Rhodes, 2 Murphy, 142; Cooper v. Pridgeon, 2 Dev. Eq. 98; Furniss v. Fox, 1 Cush. 135; Fulton v. Sawyer, 41 N. H. 202; Torrey v. Shaw, 3 Edw. Ch. 359; 1 Jarm. on Wills, 760–1.

Besides, the case would fall fully and precisely within the well established exception to the rule; for it is obvious that the postponement of the distribution was not from any considerations personal to George and Henry, who were but

two out of the eight children provided for; but, in short, was for the convenience and benefit of the estate and family, and the support, education and advancement of all the children. In such cases, with the view of assimilating as much as possible the rules of construction regulating real and personal estate, the courts hold, in analogy to the doctrine of Boraston's case, that the interest is vested.

See Smith on Exec. Inter. 163, for an enumeration of the exceptions to the rule; Leeming v. Sherratt, 2 Hare, 16; Peckham v. Gregory, 4 Hare, 396; Fuller v. Winthrop, 3 Allen, 60; 1 Jarm. on Wills, 750, 760, 763–4.

V. The interests were transmissible and devisable. In addition to the authorities cited under our third point, see the following: 1 Jarm. on Wills, 38–43, and notes; Redfield on Wills, 391; Jones v. Roe, 3 Term R. 93–6; Winslow v. Goodwin, 7 Metc. 363.

VI. On the question whether the power conferred by George Collier, Jr.'s will was well executed by the will of Harriet K. Collier, we refer to Standen v. Standen, 2 Ves. 569; Blagge v. Miles, 1 Sto. 445; Hunloke v. Gill, 1 Russ. & M. 525; Maples v. Brown, 2 Sim. 327.

*Glover & Shepley*, and *Henry Hitchcock*, for respondents.

I. The children of this testator did not take at his death vested interests in the trust fund created by § 17 of the will, but interests which he purposely made contingent till after May 6, 1867: such interests were meanwhile not transmissible by descent or devise; and the appellants, claiming solely under the will of George Collier, Jr., through the will of Harriet K. Collier, are not in any event entitled to any share of the trust estate.

As to the will of George Collier, Sen., these conclusions follow equally from,—

1. The legal effect of the provisions in said 17th clause,—
   (*a*) In respect to the estate vested in the trustees, and the incidents thereof;

(*b*) In respect to the interests conferred on said children:

2. The "scheme" or "general intent" of the testator, as deduced from the whole will.

I. The testator's intention must govern, being lawful (4 Kent, 537; Gen. Stat. Mo. ch. 131, § 49): his "general intent," or "scheme," will prevail over every particular intent inconsistent therewith (16 Mo. 54): such intent must be gathered from the whole instrument, and the construction which best harmonizes and gives effect to the whole is to be adopted (Redf. on Wills, 434–5; 1 Ves. Jr. 194, n. 4; 16 id. 512, n. 1): and the testator shall be presumed to have employed words in their ordinary legal sense, and with a view to their usual legal effect, unless a contrary intent plainly appear.—2 Jarm. Wills, 743–5, XIII.–XVII.

(*a*) As to *the estate of the trustees* in the trust fund:

It is devised to them in fee simple and absolutely, by the fullest words of limitation, "in trust for the uses and purposes hereinafter expressed." Then follow specific directions to, and extraordinary discretionary powers conferred upon, the trustees as to the entire property, including powers of sale, exchange, advancement, and final conveyance to new trustees for any child, all in their discretion, and such as without any words of limitation, even without express grant or devise to the trustees, would vest the fee simple in them by necessary implication—Hill on Trust. 236–48; Deering v. Adams, 37 Me. 265; 1 Crui. Dig. 344, n.; 14 How. (U. S.) 499; 1 Ves. Sen. 142; id. 405; 2 B. & Ald. 564; Cowp. 352; 7 Ves. Jr. 201; 16 id. 491, 505; Harton v. Harton, 7 Term R. 652; 10 Johns. 505; 2 Comst. 19; 43 Me. 206; 2 Jarm. Wills, 196–231, and cases cited.

The entire legal estate being devised to the trustees, the children cannot take as remainder-men—4 Kent, 199; Fearne Cont. Rem. 11, 373; 2 id. (Smith Ex. Int.) 57, §§ 149–51, 165; 2 Crui. Dig. p. 203: 16, 1, § 4; 2 B. & C. 930;—nor except by conveyance from the trustees in fulfilment of their

trust, at the time and with reference to the conditions designated, and not till that time capable of being fulfilled; which conveyances the trustees are expressly authorized to make to new trustees in their discretion,—a feature which alone shows the estate of the trustees to be in fee simple as to the whole, and not a term or chattel interest (Harton v. Harton, 7 T. R. 652; cit. 2 Jarm. Wills, 222; Hill on Trust. 241); and that the directions to them for final division confer a power of appointment by whose execution the trust is to be fulfilled—2 Sugd. Powers, ch. 10, vi. 3, p. 158; 1 id. ch. 3, sec. 1, § 2, p. 118.

The cases cited by appellants to show that the trustees took only a term or chattel interest are not applicable here. Boraston's case, 3 Coke, 19; Goodtitle v. Whitby, 1 Burr. 228; Doe v. Underdown, Willis, 293; Doe v. Lea, 3 T. R. 41; Doe v. Ewart, 7 A. & E. 636; Clancey v. Dickey, 2 Hawks, 514; Perry v. Rhodes, 2 Murphy, 140; Everett v. Mount, 22 Ga. 323, and the like, are all based on facts essentially different.

This testator purposely annexes to *the right of enjoyment*, as well as the possible amount, of each child's (probable) interest, an uncertainty which cannot be removed till 1867, and is made to depend upon the personal character and situation of each child at that time. This is the very key of his "scheme," and stamps the beneficial interests which he creates, as *contingent in their nature*, according to his *purpose*.

But the rule in Boraston's case, as declared by Ld. Mansfield in Goodtitle v. Whitby, 1 Burr. 228, and emphasized by Sir W. Grant in Hanson v. Graham, 6 Ves. 246–8, applies only "where *an absolute property* is given," which the legatee is to have "at all events." So in many subsequent cases the interests given to be enjoyed *in futuro* were held vested, because the postponement was *not from any consideration personal to the legatee*, but for the convenience or temporary increase of the estate, or the intermediate benefit of some third person, the ultimate gift being finally to take effect *at all events*. In not one of them was any such uncertainty as

here provided in respect to *the future enjoyment of the ultimate gift itself.* In many cases the ultimate gift was held vested because of special features not found here: as, upon provision for payment of the entire *interim* interest, income, or dividends, to the ultimate legatee (Fuller v. Winthrop, 3 Allen, 60; Davies v. Fisher, 5 Beav. 209; Hanson v. Graham, 6 Ves. 246; Felton v. Sawyer, 41 N. Hamp. 202); or provision for *interim* advances "out of *their shares* or portions," words held to import a present gift (Booth v. Booth, 4 Ves. 407; Vivian v. Mills, 1 Beav. 315; Torrey v. Shaw, 3 Edw. Ch. 256); or upon express words of inheritance or succession to the beneficiary (Saunders v. Vautier, Cr. & Ph. 248; Vanhook v. Vanhook, 1 Dev. & B. Eq. 589; Doe v. Provost, 4 Johns. 61); or other facts showing that the postponement of possession related not to the ultimate beneficiary, but to other persons—Monkhouse v. Holme, 1 Bro. Ch. 300; Fairly v. Kline, Pennington, 551. None of these cases fall within the rule (Smith Ex. Int., or 2 Fearne Cont. Rem. §§ 281, 340, *a.*) that if the postponement of possession is such as to render the ultimate interest doubtful or uncertain, the words of futurity will prevent the vesting. But this testator not only leaves in doubt at his death both the amount and the right of enjoyment of each child's interest—requiring for both the final approval of his trustees and of the Probate Court—but disables his trustees from ascertaining any share till 1867, and then requires the Probate Court to approve their decision before it shall be "final or conclusive," in any case. To such a will the rule in Boraston's, or the other cases cited, is wholly foreign; and "cases upon wills have no great weight unless they are exactly to the very point, and similar in all respects to the case before the court"—4 Johns. R. 61.

The provisions and directions to the trustees for education of the children, advancements to them, and final division of the estate "as hereinafter mentioned," all rest upon the absolute discretion of the trustees, and confer upon them *powers of appointment* by the execution of which the trusts of the will are to be fulfilled; and only by the conveyances to be

made by the trustees in execution of such powers, and exercising such discretion, can their own fee simple and absolute legal estate be determined—Duke of Marlborough v. Godolphin, 2 Ves. Sr. 61, 73; 1 Sugd. Pow. p. 106, ch. 2, § vi. 2; 2 id. p. 158, ch. 10, § vi. 3; 4 Kent's Com. 316; 2 Hill. Real Prop. 557–8.

In dividing out the estate, the trustees are put by the strongest and most express words *in loco parentis*. They are to judge of the personal conduct, character and situation of each child up to and at the time fixed—May, 1867—and are then to decide whether by reason of "unforeseen casualty, providential visitation, or their own bad conduct," or *either* of these "contingencies or misfortunes," it be "right and proper," &c., &c., to "make any distinction or difference among said children." If not, each child is to receive an equal share; but if the trustees shall think best to make any discrimination, &c., they are to stand in the testator's shoes, "with full power and authority so to do, as fully," &c., &c., "as I could do if living at the time"; and while the testator expresses a hope that each child will receive an equal share, the *amount* of each share and their equality, not only on the first but at each successive division, is expressly subjected to "the discretionary power on that point above vested in said trustees." But the judgment of the trustees was not then to be "final and conclusive" till also approved by the Probate Court; thus adding, or attempting to add, a further and external condition and uncertainty to the exercise of the power of appointment.

The terms in which the trustees' power to discriminate is declared, clearly make it a power to exclude any child coming (in their judgment) within the causes named. They can in either of said "contingencies or misfortunes" do whatever the father of the child, if still living, could have done with his own property—1 Sugd. Pow. p. 538, ch. 7, § v., and cases cited as to powers of exclusion.

These powers being discretionary, the courts cannot control or interpose with their exercise except for *mala fides*

shown; the trustees alone, acting in good faith, can judge of their duty (Hill on Trustees, 488–90); otherwise the courts would "make a will for the testator instead of expounding it"—Pink v. DeThuisey, 2 Mad. 157; French v. Davidson, 3 Mad. 396; 5 Mad. 424; 2 Beav. 236; 19 Ves. 12, 18; 5 Ves. 849; 2 Ves. & B. 225. Their power to divide the estate cannot be exercised till 1867; any attempt to fix any child's share or pass upon his qualifications before then would be void—Co. Litt. 113, *a.*; 4 Kent, 334; 13 East, 118; 1 Sugd. Powers, 334–6; 2 id. 174; 8 Barr, 424; 1 Harris, 536; 10 Watts, 274; 8 Wheat. 495; 8 Serg. & R. 299. And in 1867, their decision must relate to "all the circumstances" *at that time.*

The directions to the trustees for final division create in them a power of appointment *to a class*, viz., to the "worthy" children of the testator, being also not disqualified by the other named "contingencies." Such a power must be exercised for the benefit of those living at the time of the appointment—4 Kent, 345, note *d.*; Smith Ex. Int. (2 Fearne Cont. Rem.) §§ 227, 372; 1 Jarm. Wills, 295; 2 id. 168–9; 1 Rop. Leg. 489, 629, 632; 4 Russ. 318; 13 East, 526; 1 Ves. & B. 90; 2 Madd. 378; 1 Hill's Ch. 311, 322; 2 id. 41; 3 Edw. Ch. 251; 1 Pai. 632. No gift is made to the children *nominatim;* they are named but once, and in a separate sentence, obviously to prevent intestacy under the statute; and it remains uncertain as to each child what his share or interest will be, if any, until the trustees shall decide in 1867 whether he comes within the description of those to whom an equal share is authorized to be then given. To such a will, it is too clear for argument that the rule in Boraston's case, Goodtitle v. Whitby, &c., has no possible application.

This power of appointment is conferred on the trustees for the sole benefit of the testator's children, fulfilling in 1867 the conditions imposed as to character, &c. No allusion is made to any issue, heir, devisee, or other representative of any child, as within the trust for division of the estate. After the division is made and approved, "the shares so set apart

*to said children* shall be held *by them*, their heirs," &c.; that is, the trustees shall convey whatever shares they may set apart to the children in fee simple. This being a power to appoint and convey to children only, cannot therefore be exercised in favor of any but a child of the testator. This rule is well settled even as against grandchildren, unless where clearly "necessary in order to effectuate a manifest intent of the testator" (4 Kent, 345; 2 Sugd. Pow. 253, 256; 1 Rop. Leg. 68; 2 Jarm. Wills, 70; 3 Ves. & B. 59; 10 Ves. 195; 1 Edw. Ch. 356; 2 Vern. 107); *a fortiori* against strangers, which the appellants are—Hill on Trust. 67; see also per Ld. Thurlow, 1 Cox Ch. Cas. 72; 1 Ves. Sen. 59; 5 Sim. 543.

(*b*) As to the *nature of the children's interests* under the will:

These are in their nature contingent and not vested; because the right of enjoyment in each case is by the express terms of the will to accrue (if at all) only upon events necessarily dubious and uncertain till after May, 1867. See as to what constitutes a contingent interest, Fearne on Rem. Introd. p. 2; 4 Kent, 203, note *c*.; 2 Crui. Dig. tit. 16, ch. 1, §§ 8–10, 40, pp. 203–4, 211. To hold such interests presently vested or absolute at the testator's death, or before division made and approved as required by the will, and assignable, devisable and descendible meanwhile, is "to make a will for the testator instead of expounding it"—*Pink* v. De Thuisey, 2 Mad. Ch. 157, 160; 3 Mad. 396; Hill on Tr. 490. His intention is supreme; and the machinery so carefully provided (whether available or not) demonstrates that *he intended* no child should at his death, nor till 1867, have a present fixed right of future enjoyment to any determinate share of his estate; but if so, he intended these interests to be contingent and not vested till then.

These contingent interests *in futuro* are given for reasons, and are to be ascertained in 1867 upon conditions, strictly personal to the children named, and are therefore not trans-

missible meanwhile by descent or devise—1 Roper Leg. 636, ch. 10, § 7; 6 Ves. 147; Pre. Ch. 173.

It is clearly settled that where an uncertain event forms part of the original description of the devisee, no interest will vest till the uncertainty is removed—Smith Ex. Int. (2 Fear. Rem.) ch. 8, sec. 1, § 281; Duffield v. Duffield, 1 Dow. & C. 268, 314; Leake v. Robinson, 2 Meriv. 362. Here the equality of interests is to depend upon the character, situation, &c., of each child in 1867, to be then passed upon by the trustees, subject to the approval of the Probate Court.

The will creates a power of appointment to be exercised by the trustees in favor of such of the children who shall in 1867 fulfil its conditions. Such children will then take *by virtue of the will but under the power*, and must be then living to receive its benefit; for (per Ld. Hardw., 2 Ves. sr. 73) "it would be absurd that such a power should be exercised in favor of a person already deceased"; and the representatives of those previously deceased cannot take in their stead (1 Rop. Leg. 337; 2 Sugd. Pow. 23; id. 268–9, ch. 14, §§ 2, 17, 19; 4 Vin. Ab. 485; 1 Atk. 469; 3 Ves. & B. 198; 3 Mer. 689; 1 Cox Cha. Cas. 72), for the appointee in such cases takes jointly under the instrument creating and the instrument executing the power, and must therefore, in order to take, both be *in esse* at the date of the latter, and also answer the description required by the former. See Duke of Marlborough v. Godolphin, 2 Ves. Sen. 78. Even had these trustees no discretionary power, in the named contingencies, to exclude any child, yet upon the prior death of any an appointment of the whole to the survivors or survivor would be good (Hill on Trust. 493; 1 Ves. Jr. 299, 310, n. 1 & 2; 2 Sugd. Powers, 260, ch. 15, sec. 1, § 15; 2 Mad. Ch. 533; 1 Ves. Sr. 57; 1 Sim. & Stu. 328; 2 Ves. Sen. 208; 2 Russ. & M. 81; 4 Russ. 318; 6 Ves. 391; 16 Ves. 256; 1 Paige Ch. 632; 3 Edw. Ch. 251); *a fortiori*, when this testator gives his trustees power to discriminate "as fully as I could do if living at the time," against any child in respect to whom, by reason either of "providential visitation, unfore-

seen casualty, or their own bad conduct," the trustees "under all the circumstances" may judge such discrimination to be "right and proper." Here, death has intervened to prevent two of said children from enjoying the bounty which—provided, in 1867, both his trustees and the Probate Court should approve—he intended these children should then receive. The case is clearly within the "contingencies" he names, the first two of which import events beyond human control, and are in no possible sense *ejusdem generis* with "bad conduct." But the appellants' construction deliberately nullifies the testator's purpose, and the court is asked to strike out, instead of effectuating, this vital provision of the will—the discretion so carefully lodged with the trustees.

Another established rule of construction is, that where there is no gift but in a direction to divide, &c., among several persons at a future period, no interest will vest till that period arrives—Smith on Ex. Int. (2 Fearne Rem.) ch. 8, sec. 4, p. 151; 2 Mer. 362; 1 Jarm. Wills, 762. The postponement in such case is annexed to the gift itself, not merely to the enjoyment—2 Fearne Rem. (Sm. Ex. Int.) § 369, p. 196; I Rop. Leg. 383; 12 Ves. 75; 3 Edw. Ch. 251; 1 Pai. 632; 1 Russ. & M. 207; 1 My. & C. 132. Here there is not a word of gift to any child (out of the trust fund) in the whole will, except as gathered from the *directions to the trustees* to divide the estate in 1867 "as hereinafter mentioned"; then follow exclusively *directions to the trustees*, including unlimited power in certain contingencies to discriminate as to the amount any child may receive on the final division; which directions cannot take effect, even in the minds of the trustees, till 1867, and through which alone can any child then receive any part of the trust estate.

The framework and legal effect of this 17th clause, therefore, upon established legal principles, are conclusive that the beneficial interests thereby created were contingent in their nature. The testator himself expressly distinguishes between these contingent gifts under § 17 and the direct gifts of $50,000 each to his two elder children contained in

§ 15 of his will, by referring (in § 17) to the latter as "the *absolute* legacies or portions I have given," &c. Where a testator uses additional or different words, he is presumed to have an additional meaning—2 Jarm. Wills, 744, xviii.; 28 Ala. 500; 1 Ired. Eq. 59.

It is immaterial whether the requirement of the Probate Court's approval can or cannot be insisted on. The question here is solely on the testator's intention in making such a provision. How could he have intended by § 17 to create presently vested or absolute interests, assignable or devisable before the division and without reference to the discretionary power of the trustees over the amount of each share, and yet have made this approval in 1867 a condition of even the trustees' action being "final and conclusive"?

The authorities show that the existence, not the absence, of a limitation over in case of death, &c., is an argument in favor of vesting—1 Jarm. Wills, 738, note *b.*; 2 P. W. 626; 9 Ves. 233; 3 My. & K. 257; 33 Beav. 397; 2 Pat. & Heath. (Va.) 218. If these interests were contingent, a limitation over was unnecessary, as the prior death of any child would not leave a vested share undisposed of, but simply diminish the number of shares *to be ascertained in* 1867. See Leake v. Robinson, 2 Mer. 388.

The cases cited for appellants without exception lack the essential feature of this will, namely, the discretionary powers conferred on the trustees, and the consequent uncertainty of the right of future enjoyment of any part of the trust estate by the beneficiaries. This is of the essence of a contingent, as distinguished from a vested interest (4 Kent, 203; Fearne on Rem. Introd. 2; 2 Crui. Dig. 203–4, 211), and the conditions of the ultimate right of enjoyment being personal to each child, the possibility dies with him.

II. By comparing the different parts of the will, and deducing from the whole instrument the "scheme" or "general intent" of the testator, the same result is reached.

The first thirteen paragraphs of the will contain a series of legacies, all in terms of direct gift, either to the legatees

named or to trustees for their benefit. No discretionary power is anywhere conferred; the intent to confer present, absolute titles is unmistakable, and the unequivocal significance of the terms employed in making these bequests sets forth in marked contrast the wholly dissimilar provisions of the 17th paragraph. The former class of terms says, beyond dispute, "We mean to pass present titles and confer fixed rights." The latter as plainly declares that no fixed rights are created, no titles presently vested, in the beneficiaries; that while the testator does not dispose of the property himself, he appoints agents or trustees who may dispose of it; while he does not give his property to his children, they are plainly told who may give it to them; that though they do not get it presently, yet there is a way by which they may get it; that though he regards them tenderly as his children and probable beneficiaries of his paternal bounty, yet they are contingent beneficiaries; and though he loves them all equally, yet as to this trust fund he puts all of them under conditions.

The obvious purpose of this scheme was to guard his children against the dangers of wealth, by making its possession dependent on their own conduct and character while the probationary period lasted. For this purpose their mother was appointed co-trustee with the testator's relative, Bredell, and his confidential friend, Chadwick. No child could receive anything before the final division except what the trustees saw proper to give; the authority to make advances to each "on coming of age, or being married or settled in life," was absolutely discretionary with the trustees; and in making that division, unlimited power was vested in them to reduce the *amount* to be set apart to any child, if such discrimination should in their judgment be "right and proper," &c. Yet the appellants claim that from the moment of the testator's death one equal eighth of the estate vested absolutely in each child, and was assignable, devisable, and descendible, in spite of trustees and testator both!

The suggestion that the respondents' construction, in case

either of the deceased children had left a child, would exclude such grandchild from a share on the final division, is simply irrelevant. We have to do with the intention of the testator *solely as deducible from this will.* There is not a word in it about any grandchild or other representative of a deceased child, though the provision authorizing advances to any child on being married distinctly recognizes the possibility of grandchildren before the division. But he does authorize the total exclusion, in the division, of a living child, who might have a dependent family. Nothing in the will indicates that orphan grandchildren were to have greater rights. He chose to disregard his possible grandchildren altogether, and the court sits here not to make a new will for this testator, but to effectuate the will he made. The argument based on the suppositious necessities of imaginary grandchildren is not supported by a syllable in this will, but is an attempt, in the interest of total strangers, to disregard the vital features and nullify the most careful provisions of the instrument. The respondents' theory harmonizes and gives effect to every clause.

III. Even were it true that the representatives of George and Henry Collier are entitled to share in the division of the estate, the appellants have no claim under the will of the former to any part of what he might have received.

The will of George Collier, Jr., gave to his wife, absolutely, certain specified property then owned by him in Texas. It also gave her the use of his estate for life, and power to dispose by will of one-half thereof at her death. Her interest was a mere life estate with testamentary power of appointment over one-half, which if she did not duly execute by her will, the property went at her death to his next of kin—Rubey v. Barnett, 12 Mo. 1; Gregory v. Cowgill, 19 Mo. 415; 16 Johns. 587; 11 Serg. & R. 16; 13 Ves. 453; 16 Ves. 139; 19 Ves. 87; 1 Sugd. Pow. 120–6.

Harriet K. Collier's will gives to the appellants the entire property of which she may die possessed, including all rights acquired by her under her husband's will. This is no exe-

cution of the power—Roake v. Denn, 1 Dow. & C. 437; Blagge v. Miles, 1 Story's R. 426; 13 Ves. 445; 2 Chance on Pow. 84 [1632].

WAGNER, Judge, delivered the opinion of the court.

This is a suit brought by the trustees, under the will of George Collier, deceased, against the widow, the children of the deceased, and certain other persons claiming an interest in the estate. The purpose of the proceedings was to obtain from the court below, as a court of equity, proper instructions and directions for the guidance of the trustees in the construction of the will, in executing their trusts.

They allege in their bill that since the death of their testator, two of his children, who are mentioned in the will as beneficiaries in certain contingencies, have deceased—one of them Henry Collier, an infant; the other George Collier, Jr., an adult, whose last will has been admitted to probate and administration granted thereon in St. Louis county;—that these events, not being among the contingencies expressly provided for in the will of their testator, have given rise to doubts respecting the construction of the will, which the trustees are unwilling to decide without the sanction of the court.

The main question to be decided is whether the devisees George and Henry, took vested and transmissible estates under the will, or merely contingent interests, dependent upon certain conditions. The Circuit Court construed their interests to be contingent, and rendered a decree by which their representatives, and those claiming under them, were debarred of all right or title to any share of the estate derived from them. It is this decree which is now before us for revision.

The testator, Collier, after making several specific bequests in the prior parts of his will, gives, devises and bequeaths, in the 17th clause, all the rest, residue and remainder of his estate, not otherwise disposed of, whether real, personal or mixed, of whatever kind and wheresoever situated, unto his

wife Sarah A., his nephew Edward Bredell, and his friend Alfred Chadwick, as trustees, to have and to hold the same unto them, the said Sarah A., Edward and Alfred, as joint tenants, and not as tenants in common, and unto the survivors or survivor of them, and to the heirs, executors, administrators and assigns of such survivor forever, as trustees in trust for the uses and purposes in the said 17th clause expressed. He then gives specific and circumstantial directions about the management and disposition of his estate, and the maintenance, support and education of his children. For his two eldest children, George and Mary, he had already provided by an advancement. In addition to these he left the following children, which were all named: Margaret D., John P., William B., Maurice Dwight, Thomas F. and Henry Collier. He then continues: "And it is my will and desire that as and whenever any of my children (prior to the first division or partition that shall be made as hereinafter provided) shall become of age, or become married or settled in life, my said trustees shall advance to any such of them, any such amounts of money or property as in their judgment and discretion shall be right and proper, keeping correct accounts thereof. And when my said son Dwight shall attain the age of twenty-one years, I wish and require my said executors and trustees immediately to settle up my estate, and divide the same out among my said children, as hereinafter mentioned, as far as it may be practicable. And if division thereof cannot, without detriment and loss, be then at once effected of the entire estate, I desire and direct that it be made so far as it can be accomplished; and then, so soon thereafter as practicable, I require a further division to be made, and so on from time to time until the whole estate shall be settled and partitioned among my children. And whenever any division or partition shall be made as aforesaid, I require that my said executors and trustees shall report the same to the Probate Court of said county of St. Louis for its approval, and if the same be approved of by said court then the same shall be binding and conclusive. And so of any and all di-

visions that my said executors and trustees shall make as aforesaid. In making partition as aforesaid, I wish and direct that each and all my said children shall receive equal portions or shares, as my affection and parental regard for them all know no distinction. But if, from providential visitation or unforeseen casualty, or their own bad conduct—none of which contingencies or misfortunes I hope may ever intervene—my said trustees shall think it right and proper and safest and best, under all the circumstances, to make any difference or distinction among my said children, or any of them, in making any of the divisions or partitions as above provided for, they are hereby vested with full power and authority to do so, as fully and to all intents and purposes as I myself could do if living at the time; such discrimination always, however, to be subject to the approval of the said Probate Court, as aforesaid. But if all my children shall be worthy, no distinction or difference shall be made among them merely because one or some of them may be deemed by my said trustees more worthy than the others of them. The shares or portions of my estate which shall be thus set apart to my children, shall be held by them in their own several rights, under the full and perfect legal title—to them and to their heirs, executors, administrators and assigns, forever." Provision is then made in regard to advances that may be made from time to time, and requiring compound interest *to be paid* on subsequent portions, so as to make them equal to those who had received prior shares.

It is argued that, by the express terms of the will, the whole legal title to the estate vested in the trustees at the death of the testator, and that when the contingency happened upon which the division or partition was to be made—Dwight attaining the age of twenty-one—the children would receive their portions by appointment, under the power contained in the will, and not directly by the will itself. Our statute, which provides that the intention of the testator must prevail in the construction of a will, is simply declaratory of the rules of law, as they have existed for an almost

indefinite period. The first thing to be ascertained is what was meant by the testator in framing his will; and if his meaning and intention are not violative of any rules of law, they must be carried out and executed. As wills are generally dissimilar, and one can hardly be found precisely like another, cases are rarely to be met with which are directly apposite, so as to be controlling authority in any new case which may arise. But there are certain rules of law which have grown up and become firmly fixed in the interpretation of wills, which no court is at liberty to disregard, unless the language of the testator, in making the devise, plainly requires it; and one of these rules is, that all estates shall be considered vested rather than contingent. The law is said to favor the vesting of estates, the effect of which principle seems to be, that property which is the subject of any disposition, whether testamentary or otherwise, will belong to the object of the gift immediately on the instrument taking effect, or so soon afterwards as such object comes into existence, or the terms thereof will permit. As therefore a will takes effect at the death of the testator, it follows that any devise or bequest in favor of a person *in esse* simply (without any intimation of a desire to suspend or postpone its operation) confers an immediately vested interest—1 Jarm. on Wills, 726, and note by Perk.; 2 Fearne on Rem. 73. Where words of futurity are introduced into the gift, the question arises whether the expressions are inserted for the purpose of protracting the vesting, or point merely to the deferred possession or enjoyment—Jarm. *ib.* The cases are very numerous bearing upon this subject, and a few of them will be noticed. In Boraston's case, 3 Coke, 19, a testator devised land to A. and B. for eight years, and after the said term the land to remain to his executors, for the performance of his will, till such time as H. should accomplish his age of twenty-one years, and *when* the said H. should come to the age of twenty-one, then to him, his heirs and assigns forever. H. died under twenty-one. It was contended that the remainder was not to vest in him unless he attained the pre-

scribed age; but the court held it to be vested immediately; the case being, it was said, nothing else in effect than a devise to the executors, till H. attained the age of twenty-one, remainder to H. in fee; and that the adverbs of time, *when*, &c., do not make anything necessary to precede the settling (that is, the vesting of the remainder), but merely expressed the time when it should take effect.

In Goodtitle v. Whitby, 1 Bur. 228, the testator devised all his messuages, lands, &c., to two trustees and the survivor of them, and the heirs of such survivor (whom he also made executors), in trust that they and the survivor of them, his heirs and assigns, should lay out the rents and profits for the maintenance, education, bringing up and putting out his two nephews; and when they should attain twenty-one, to be to them and their heirs equally;—held, an immediate gift to the two nephews, and vested in them immediately, with a trust to be executed for their benefit during their minority.

In Doe v. Underdown, Willis, 293, it is said a devise of lands to A. till B. attain the age of twenty-one, and then to B. in fee, gives B. a vested interest descendible to his heirs if he die before twenty-one.

In the case of Doe v. Lea, 3 Term R. 41, the testator devised the premises in question to certain persons in trust until M. L. should attain the age of twenty-four, on condition that they should, out of the rents and profits, during all that time, keep the buildings in repair. He subsequently devised the same premises to the said M. L. upon and as soon as he should attain the age of twenty-four, and directed the trustees to surrender the premises accordingly. M. L. died under twenty-four, and it was held by the King's Bench unanimously—Lord Kenyon, C. J., delivering the opinion—that M. L. took a vested and descendible interest.

In the recent case of Doe d. Cadogan v. Ewart, 7 Adol. & El. 636, the testator devised his real estate to trustees, upon trust for his wife during widowhood; and after her decease or marriage again, upon trust to apply the rents towards the maintenance of his daughter until she should attain the age

of 25 years; and from and after her attaining that age, then upon trust for his said daughter, her heirs and assigns, forever; but in case his said daughter should depart this life without issue, then the testator devised the said real estate over. The daughter, after the decease of the widow, and before she attained the age of twenty-five years, suffered a common recovery; and it was held that such recovery was effectual to acquire the equitable fee simple, she having a vested estate tail in equity at the time.

Jarman seems to lay down the true doctrine, and observes that the construction which reads words that are seemingly creative of a future interest, as referring merely to the futurity of possession occasioned by the carving out of a prior interest, and as pointing to the determination of that interest, and not as designed to postpone the vesting, has obtained in some instances where the terms in which the posterior gift is framed import contingency, and would, unconnected with and unexplained by the prior gift, clearly postpone the vesting. Thus, where a testator devises lands to trustees until A. shall attain the age of twenty-one years, and if, or when he shall attain that age, then to him in fee, this is construed as conferring on A. a vested estate in fee simple subject to the prior chattel-interest given to the trustees, and consequently on A.'s death, under the prescribed age, the property descends to his heir at law; though it is quite clear that a devise to A., if, or when he shall attain the age of twenty-one years, standing isolated and detached from the context, would confer a contingent interest only.

This being a mixed gift, the rules of law applicable to a devise of realty will apply, though, did it exclusively concern personalty, there would be no essential difference, as a few cases will readily demonstrate. Thus in *Clancey* v. *Dickey*, 2 Hawks, 514, the father of a minor appointed his wife executrix of his will, which contained the following clauses: "It is my will and desire that my negroes shall be kept together until my children arrive at full age or marry, and then to be divided between my beloved wife and children, share and share

alike equally;" and, "It is my will and desire that whenever any of my children arrives at full age or marries, that his or her share of my estate be delivered to him or her immediately." In passing upon this, the court used the following language: "Taking the whole will together, and considering that the only legatees in it were his wife and children, who were also residuary legatees, it admits of the same construction as if he had left the negroes to be kept together by his wife, for the benefit of the family, until one of his children should arrive at age or be married, when they were to be divided between them and his wife; thus disannexing the time of division from the substance of the gift."

In Perry v. Rhodes, 2 Murphy, 140, the question arose upon the construction of the will of Hardy Witherington. He bequeathed all his movable estate, excepting his negroes, to his wife, till his youngest daughter arrived at the age of twenty-one years, and then to be equally divided among his wife and daughters. And as to his negroes, he directed them to be hired out annually till his youngest daughter attained the age of twenty-one, and that his wife should have the money arising from their hire till that time, when they and their increase were to be equally divided among his wife and daughters. One of the daughters died before the youngest of them attained the age of twenty-one years. Held, that her representative was entitled to a distributive share of the negroes, for the right vested immediately, and the enjoyment thereof only was postponed.

In Everett v. Mount, 22 Georgia, 323, the will contained this clause: "I desire that the balance of my property shall remain together until my youngest child comes of age, each to be clothed and educated out of my estate equal with my other children, and my estate to pay them $1,000 as they come of age; and when my youngest child comes of age, I wish an equal division of the balance of my property." One of the daughters died under age. It was decided that the legacy vested on the death of the testator.

But it is said that no interest is conferred upon the chil-

dren except in the directions to the trustees. We think otherwise. There are directions to pay, to transfer, divide and partition, which import a gift, unless they are restricted by some inconsistent limitation or condition. The irresistible inference is that a gift was intended in the constitution of the trust, and that the gift to the trustees was for the benefit of the children only.

Of this description was the case of Felton v. Sawyer, 41 N. H. 202. In this case a testator gave a trustee, for his daughter, by name, all his estate, to sell, reinvest, and secure, as he should deem expedient; and he was authorized in his discretion to pay to the daughter before she attained twenty-one years of age not exceeding six per cent.; before she became twenty-five, not more than one-third; before thirty, not more than two-thirds; and on or before she became thirty-five, he was to pay over the whole of the estate. It was contended there that there was no gift to the daughter except in the direction to pay, and that as the daughter died before the bequest vested, the estate lapsed for the benefit of the heirs at law or next of kin. The court say the whole property was given to the daughter, though with the intervention of a trustee, and decide that a gift to a trustee was a gift to the *cestui qui trust*, and that the directions as to payment went only to the enjoyment in possession.

The postponement of the payment, division and partition in the case here seems to be more for the benefit and convenience of the estate than for any considerations personal to the heirs and devisees, and where such is the case it is clear that deferring the payment or partition does not prevent the devise or legacy from vesting—Fuller v. Winthrop, 3 Allen, 51; Harris v. Fly, 7 Paige, 421; Marsh v. Wheeler, 2 Edw. Ch. 163; 1 Jarm. 756–63.

Another consideration is, there is no devise over of the respective interests, showing any purpose in the testator that the devisees should not receive their shares at all events. The consequence of the rule that the estate did not vest, and the devisees took no immediate interest, would be, that if

any of the devisees died before Dwight attained the age of twenty-one, leaving children, those children would be wholly unprovided for; which we will not believe was the intention of the testator. Parents are not generally actuated by such intentions, and unless they are apparent and unmistakable, such intentions will not be ascribed to them.

The testator gives, devises and bequeaths all the rest, residue and remainder of his estate to the trustees, for the uses and purposes expressed. It is immaterial that the money is not to be paid or the property divided till a future period. It is scarcely distinguishable from a bond for the payment of money at a future date. It is *debitum in presenti* though *solvendum in futuro.*

The great error in the argument of the counsel for respondents appears to be, that the children take nothing by virtue of the will, but that they receive their distributive shares by appointment under the power conferred on the trustees. A fair and natural construction of the will rebuts this idea. The estate is devised to them till Dwight becomes of age, and then it is made the duty of the trustees to partition the same among them. The testator gives the trustees power to discriminate in the amounts and shares allotted to each of the children, if from providential visitation or unforeseen casualty, or the bad conduct of any of the children, they should see proper to do so; this power, however, always to be exercised with the approval of the Probate Court. It may be conceded that the real meaning in the mind of the testator, as to providential visitation or unforeseen casualty is at least indefinite and vague. The words are coupled with bad conduct, and they may perhaps all be referred to the same class. This view would seem to be strengthened from the sentence immediately following: "But if all my children shall be worthy, no distinction or difference shall be made among them merely because one or some of them may be deemed by my said trustees more worthy than the others of them." Providential visitation and unforeseen casualty are certainly not used in their primary etymological sense.

Accident, casualty or bad conduct might make it highly judicious and proper that the power of discriminating should be used, not for the purpose of cutting off the share of a child entirely who had been unfortunate and indiscreet, but to vary the character or modify the disposition to be made of the property assigned to him. The action of the trustees is not a condition precedent to the vesting of the estate in the devisees, and whatever power they may have to make a difference or distinction on account of casualty or bad conduct is a discretion subsequent.

There is nothing to indicate that the testator intended to exclude a child from partition by death, for there is no such expression in his will, nor is there any devise over in view of such an event. An event has occurred—the death of two of the children—which prevents the trustees from making any distinction or difference as to them, and so far as they are concerned, there is nothing to evoke the power given. We attach no importance to the condition, that any action that the trustees might take in the premises should be approved by the Probate Court before it would be binding and conclusive. The duty imposed upon the court is wholly extrajudicial, and its sanction could impart to the proceedings no validity. Or should the court refuse to act in this extra-official manner, will it be contended that no estate vests? If the trustees neglect or refuse to act, or abuse their trust, they are amenable to a court of equity, which will always assert its jurisdiction in such cases.

We have now disposed of really the only questions before the court, but there is another matter which has found its way into the decree, and, as the parties desire an expression of opinion on it to aid them in making a complete and final adjustment of the estate, we will proceed to examine it.

The will of George Collier, Jr., contained the following clauses: "2d. I give and bequeath to my dearly beloved wife, Harriet K. Collier, the entire usufruct of all my estate, real, personal and mixed, of every character and description, wherever situated at the time of my death, so that she may enjoy

the sole and entire revenue and income thereof during her life. 3d. I give to my said wife the absolute right to dispose of one-half of my said property at her decease, by testamentary disposition, as she may deem right and proper."

Harriet K. Collier died a short time after the decease of her husband George, and the disposing part of her will is in these words: "I give to my dear mother, Mary Kearny, the entire property of which I may die possessed, wherever situated, real, personal and mixed, of every character and description, including *any and all rights acquired by me under the will of my late husband*, to enjoy the sole and entire use of the same during her life," &c. It is now contended that the will of Harriet does not execute the power given to her by her husband, of the right to dispose of one-half of his property by testamentary disposition. The general rule in reference to the execution of powers by will is thus stated by Chancellor Kent, in his commentaries: "In the case of wills it has been repeatedly declared, and it is now the settled rule, that in respect to the execution of a power, there must be a reference to the subject of it, or to the power itself; unless it be in a case in which the will would be inoperative without the aid of the power, and the intention to execute the power becomes clear and manifest. The intent must be so clear that no other reasonable intent can be imputed to the will, and if the will does not refer to a power or the subject of it, and if the words of the will may be satisfied without supposing an intention to execute the power, then unless the intent to execute the power be clearly expressed it is no execution of it"—4 Kent's Com. 335.

Mr. Justice Story, in Blagge v. Miles, 1 Story R. 426, gives three classes which have been held to be sufficient demonstrations of an intended execution of power. "1st. Where there has been some reference in the will or other instrument to the power; 2d. Or a reference to the property which is the subject on which it is to be executed; 3d. Or where the provision in the will or other instrument executed by the donee of the power would otherwise be ineffectual, or

a mere nullity—in other words, would have no operation, except as an execution of the power." He further remarks that these are not all the cases, and that it was always open to inquire into the intention, under all the circumstances, while he agrees that "the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation."

In Maples v. Brown, 2 Sim. 327, the testator gave £3,000 to trustees, for his daughter for life; remainder to such persons as she should appoint. The daughter, by her will, disposed of all her personal estate, and then gave all sums, messuages, &c., and other interests to which she was entitled under the testator's will. The only reference that was made in the will of the daughter was in these words: "I also give, devise and bequeath unto all and every," &c., the "interest to which I am, or shall, or may hereafter become entitled under and by virtue of the provisions and directions contained in the last will and testament of my late father."

It was insisted there, as here, that the testatrix, from the words used, had only disposed of the property in which she had an interest; that she had a life interest only in the £3,-000, under her father's will, with a power to appoint the capital, and that she had not executed the power, but given merely what she had an interest in. But the Vice-Chancellor held otherwise, as follows: "The testatrix, in the former part of her will, disposes of all her personal estate; therefore, the words at the latter end cannot refer to what was her own, as they would be superfluous. It is therefore, on a view of the latter words as contrasted with the former ones, that I hold the will to be an execution of the power." It is not to be denied that, according to the technical niceties formerly existing in the English Chancery courts, the testamentary disposition of Harriet K. Collier would not constitute a good execution of the power contained in the will of her husband. But the question in England has been settled conformably to the intention of the testators, by statutory enactment, and the principle furnished by the authorities above referred to

seems to be, that if the donee of the power intends to exe-
cute, and the method adopted for that purpose is unexception-
able, that intention, however manifested, whether it appears
by positive terms or just implication, will amount to a valid
and operative execution. The second clause of the will
of Harriet K. gives to her mother her entire property of
every character and description, including any and all rights
acquired by her under the will of her late husband. Here
is a direct reference to the power, and in a manner so expli-
cit that there can be no room left for doubt. The intention
is so palpable and apparent that it would require the appli-
cation of artificial, technical rules to destroy the presumption
in its favor.

Our conclusion, therefore, is that the will of Harriet K.
amounts to, and must be holden a valid and operative exe-
cution of the power.

The judgment of the court below will be reversed and the
cause remanded. The other judges concur.