# DECISIONS

# SUPREME COURT OF MISSOURI.

## SECOND JUDICIAL DISTRICT,

### AUGUST TERM, 1838.

---

### ERWIN v. HENRY.

1. The circuit court, as a court of chancery, has concurrent original jurisdiction with the county court, in compelling administrators, executors, &c. to make just inventories, settlements, distributions and payment of legacies. But where either court has exercised jurisdiction, and no appeal has been taken, the subject matter adjudicated cannot again be made the subject of litigation, unless attacked for fraud in obtaining the judgment. TOMPKINS, Judge, dissenting.

2. A testator, by will, manumitted his slaves at specified times after his death, willing that one of them, a female, should serve the executor for four years and then have her freedom; and after making various specific legacies, embracing the mass of his property, he desired "that his crop of grain, farming utensils, household furniture, &c. should be valued and acted on according to law," and concluded "that if there was a residue from hire of negroes, crop, &c. he wished it given to E." (the complainant.) Held, that it was the intent of the testator, in desiring his crops, farming utensils, &c. *to be acted on according to law,* not that they should be distributed as in cases of intestacy, but that they should be appraised and sold for the payment of his debts—otherwise, the last clause, constituting a residuary legatee, would be nugatory. And the female slave, who was directed in the will to be hired out for four years, having during that time and before she acquired her freedom, borne a child, it was held, that the value of the child should be applied to relieve the residue, out of which the debts and expenses were paid, and should in that way at least inure to the benefit of the residuary legatee, E.

*Carty Wells,* counsel for appellant, cited:
2 Bibb, 298; 1 Mar. 532; 1 Wil. 333; 3 do. 141; 1 H. Bl. 223; 2 do. 144, 450, 451; 1 Sto. 560, 529 to 540 and

473; 2 Tuc. Com. 492; 1 do. 437; 1 Mit. 144; 1 J. C. R. 620, 166; 6 Con. R. 500; 1 Sto. Com. 323, 509 to 514, 80, 533, 64, 512, 967; 2 do. 328, 329, 453; 2 Blk. Com. 494; 3 do. 98; 4 Bell, 266; 3 Whea. 221, 223; 3 Pet. 433, 447; 1 Tuc. Com. 499; 8 Vez. 380; 2 Mad. Ch. 6; Rev. S. M. 155, sec. 8; 2 Vez. 285; 3 Wil. 141; 2 H. Blk. 444, 850, 851; 1 do. 223; 1 J. C. R. 498, 620, 116; 6 Con. Rep. U. S. 500; 1 Tuc. Com. 449; 8 Vez. 380; 2 Mad. Ch. 6; 2 J. C. R. 339; M. L. 508, sec. 2.

*E. Bates,* counsel for defendant, cited:
Rev. C. 156; 2 Wm. & Ex. 1186; 7 S. T. R. 690.

McGIRK, Judge, delivered the opinion of the court.

In 1836, Erwin filed her bill in the circuit court of Lincoln county, praying that court to decree to her a specific legacy which she alleges was bequeathed to her by the last will and testament of one Malcom Henry. The bill was demurred to for want of equity, and was dismissed by the court. It appears by the record that the testator, Malcom N. Henry, made his last will and testament, and shortly thereafter died. The will commences with the usual solemnity, and then says that after the burial expenses are paid, and all his debts are paid, the following disposition of the property shall be made: "Item 1st. It is my will and desire that my boy, Adam, Juno and Cynthia, be released from bondage, on condition that Juno serve my sister Mary one year; Adam and Cynthia to serve the executor of my estate, or serve them to whom he hire them. Adam to serve two years, and Cynthia to serve four years, each then to have their perfect freedom, provided my sister may quit her claim to Juno; otherwise, the property I will to her shall hereafter be equally divided between my brothers and sisters: my desire is to pay sister Mary well for her claim on Juno." The will then goes on to make several specific bequests and divises of real estate, apparently to a considerable amount. Then the will declares thus: "My crop of grain, farming utensils, household and kitchen furniture, and stock, all of which I want valued and acted on according to law, after my affairs are settled; then, if there is a residue from hire of negroes, crop, &c. I wish it to be given to Eleanor Erwin. I appoint Francis Henry my sole executor," &c. The bill charges that the executor took upon himself the execution of the will; made certain inventories, appraisements, &c.; and

also, certain settlements with the county court of Lincoln county; paid the specific legacies; sold the personal property of the testator, required by the will "to be acted on according to law." The bill charges that during the four years Cynthia, the female slave, was required to serve before her freedom commenced, she had borne a female child, which, by the will, was wholly undisposed of, and that the same thereby fell into the general residue; that the complainant is entitled to said child as residuary legatee after the payment of debts. The bill alleges that all debts are paid; that considerable sums of money came to the hands of the executor which he has rendered no account of; that he embezzled divers goods, chattels and effects belonging to the testator; has rendered no account of the hire of the slaves; that he privately and against law, opened a certain trunk of deceased, which the bill alleges contained valuable property, and that he has rendered no account of it; that he claims the female child, the slave, as his own; that he made unjust and unfounded charges of expenses for administering the estate; that, deceiving said court, has made a settlement of his executorship, by which settlement no residue is left. The bill charges divers other mal-practices, and prays for a discovery of assets, a resettlement of accounts already settled, and that the slave may be decreed to her, and for general relief. On the argument of the cause here, Mr. Bates, of counsel for the defendant, Henry, has made several objections to the claimant's right to recover, the first of which is, that the matter of the complaint belongs exclusively to the county court. The second is, that in regard to the matters already settled by the county court, as no appeal was taken from that court, its proceedings, as far as they go, are conclusive.

3. That by the true construction of the will, the slave does not pass to the complainant by the residuary clause, but falls into the general assets. Mr. Wells, for the complainant, insists that, by the British chancery law, it was a peculiar power of courts of chancery to decree the payment of legacies, and particularly the payment of residuary legacies, and that that court took cognizance of accounts of executors and administrators, and compelled them to discover assets and render just accounts; and to prove this, he cites many authorities—see Mitford, 114; 1 J. Ch. R. 620; 1 Story's Com. 599, 509 to 514. I have no doubt of the power of the chancery court in England, and that it has the power claimed for it by the complainant's counsel as to this matter.

AUGUST TERM, 1838.

Erwin
v.
Henry.

The circuit court, as a court of chancery, has concurrent original jurisdiction with the county court, in compelling administrators, executors, &c. to make just inventories, settlements, distributions and payment of legacies. But when either court has exercised jurisdiction, and no appeal has been taken, the subject matter adjudicated cannot again be made the subject of litigation, unless attacked for fraud in obtaining the judgment. TOMPKINS, Judge, dissenting.

The counsel for the defendant admits that such is the case; but he contends that all matters relating to the payment of legacies, the due execution of wills, and the settlement of deceased persons' estates, are exclusively given by the act of the general assembly to the county court; therefore, the bill was rightly dismissed for want of jurisdiction in the court as a court of chancery.

By the 15th section of the act respecting county courts, it is enacted that the county court shall have, first, exclusive original jurisdiction in all cases relative to the probate of last wills and testaments, the granting letters testamentary and of administration, and repealing the same. The second clause then proceeds to enumerate other instances of jurisdiction, but drops the words "exclusive original jurisdiction." In the third paragraph, power is given to settle the accounts of executors, administrators and guardians, but still the words "exclusive original jurisdiction" do not occur. Yet we must at least read here that the jurisdiction is to be original and not appellate, and I see no great reason why we may not read also, that the jurisdiction shall be exclusive as well as original, so far as the mere tacking of sense and sentences is concerned. This idea is also strengthened by the fact, that in the seventh instance, the act says the county court shall have concurrent jurisdiction with the circuit court in all such cases, where the demand shall exceed that sum—that is, a sum just enumerated in the sixth instance, which is the sum of $100. I should have no doubt the words "original exclusive jurisdiction" would well pervade the statute till the 7th clause, if it were not apparent that the concurrent power in the 7th clause mentioned, is only mentioned for the purpose of parcelling out the objects of the concurrent authority in the 6th and 7th clauses only. If, indeed, the concurrent power is to be carried up to the 7th clause by implication, the same rule would carry the concurrent power to a great length beyond the 7th clause. In the 9th clause, both courts would have power to control and manage the property of the county; in the 10th, both would have power to purchase property for the county; in the 11th, to sell the same; and 12th, to audit and settle accounts against the county. For these reasons, I cannot admit that the exclusive jurisdiction in the first clause mentioned goes beyond that clause; nor that the concurrent jurisdiction mentioned in the seventh clause goes beyond it. Then, whatever is given to

the county court belongs to it, and that given to the circuit court belongs to it properly; and that wherever the subject of litigation is given to both courts without some exclusive words in that matter, the jurisdiction is concurrent. By the 1st section of the amended constitution, the supreme and circuit courts are invested with chancery power, to be exercised in such manner as shall be prescribed by law; and by the 2d section, the whole judicial power, as to matters of law and equity, is vested in the supreme court, circuit courts, and county courts. This power is to be exercised in the manner prescribed by law. The act respecting county courts has, in general, marked out the powers that can be exercised by the county court; and the act respecting the circuit courts has, in like manner, marked out those powers to be exercised by the circuit court; but in some instances the same power, on particular subjects, has been given to both courts without any declaratory words as to whether the legislature intended the jurisdiction should be exclusive or concurrent. In all such cases, I take the jurisdiction to be concurrent. In the county court act, power is given to require and compel executors, administrators, &c. to render just inventories, to make just settlements, to pay legacies, and to make distribution of shares, and the like. And by the act of the legislature of 1835, page 155, respecting circuit courts, it is also provided, that the circuit courts shall have general jurisdiction, and special jurisdiction also. It is declared by the 7th paragraph, that the said court shall have a general control over executors, administrators, guardians, minors, idiots, lunatics, and persons of unsound mind; and shall proceed therein according to the rules, usages and practice of courts of equity. This power is, in the same act, given to the county court. This power, given to the circuit court as a court of equity, is exactly the power exercised by the English courts of equity over the same subjects. I cannot doubt that the jurisdiction is concurrent. In the case at bar, my opinion is, that as to so much of the subject matter of this suit as may have been adjudicated on by the county court, and not appealed from, the same cannot, unless for fraud in obtaining the adjudication, be again the subject of litigation in a court of chancery, or any other court; for the rule of law is, that where several courts have concurrent jurisdiction of a matter, if one gets hold of the matter and acts on it, that action precludes the others from like action.

It appears by the bill in this case, that several impor-

tant matters relating to the estate, have not yet been acted on; so that I am of opinion the circuit court has jurisdiction of the cause. The next inquiry is, what is the effect of this will on the claim set up by the complainant. Mr. Wells has cited several authorities to show instances in which the courts have had before them the effects of residuary clauses—3 Will. 141; 1 H. B. Rep. 223; 2 do. R. 444, 50–1; 1 Will. 333. It does not seem to me that these authorities throw much light on the clause in this will. It is true, in these cases, the court have recognized the principle that it is the duty of the court to find out, if they can, what was the intent and wish of the testator. The complainant's counsel insists, also, that the slave passes in kind to her by the residuary clause. On this point, I am not at present entirely satisfied, but incline to the opinion it is not.

I will now proceed to discover, if I can, what it was the testator intended should pass by the residuary clause to the complainant, in the first part of the will. It is not, as the counsel has supposed, that the words show any exact intention of disposing of all the testator's effects—there is no words to that effect; but this is, in general, to be presumed from the fact that the testator says, in substance, he expects to die shortly, and therefore, makes his will. This will first charges all the estate with the payment of debts and personal expenses; then it proceeds to parcel out divers pieces of real and personal property. I don't doubt that the testator thought he had, by this will, disposed of all his substance, and that, with regard to those things specifically devised, he had provided for those who were the first objects of his bounty. Then he seems to have remembered that he had farming utensils, a growing crop, and a stock of cattle, horses, and the like; and also, that he had provided for the hireing negroes out to labor. It then became a question in his mind what should be done with these things. All this time it seems never to have occurred to him that Cynthia might, before she became free, have a child; therefore, he makes no provision in regard to that event. With a view, then, to dispose of those things yet on hand, he directs and says, "my crop of grain, farming utensils, household and kitchen furniture, and stock, is all to be sold and acted on according to law." No one can doubt the meaning of this direction, that the property is to be inventoried and sold, and the money collected and used to pay debts as far as necessary, to pay expenses of administration, and the like;

A testator, by will, manumitted his slaves at specified times after his death, willing that one of them, a female, should serve the executor for four years and then have her freedom; and after making various specific legacies, embracing the mass of his property, he desired "that his crop of grain, farming utensils, household furniture, &c. should be valued and acted on according to law," and concluded "that if there was a residue from hire of negroes, crop, &c. he wished it given to H," (the complainant. Held, that it was the intent of the testator, in desiring his crops, farming utensils, &c. *to be acted on according to law,* not that they should be distributed as in cases of intestacy, but

then the testator, pursuing the idea further, declares that, after all his affairs are settled, if there be any residue from the hire of negroes, crop, &c. the complainant shall have it. There would be no obscurity in this devise, if it were not for the words "hire of negroes, crop," &c. It is said by the defendant's counsel, that there must be a residue from the hire of negroes, and the sale of the crop, farming utensils, and household and kitchen furniture. I do not think this is a fair construction of the will. I do not believe that when the testator directed his stock, crop, utensils and furniture to be valued and acted on according to law, that he meant thereby to have the proceeds thereof distributed as in cases of intestacy; and one reason for it is, the item of the crop is mentioned here also, as well as in the enumeration of substances out of which the residuary devise was to be made. As to the proceeds of this item, the testator could be supposed to mean that they should go to his next of kin, and to the complainant also, as residuary legatee. This instance, in my opinion, proves that the testator did not mean to limit the fund or substance out of which the residue should arise, to the two things done, mentioned; the hire of negroes, crop, &c. being mentioned only to show the character of the substances out of which the residue should arise, and not the identity of the objects. The character, then, is that of personalty and not of realty; and that the testator had more in his mind than he did express by words, is clear, from the annexation of the "&c.;" what it was, must be gathered from the several parts of the will. From this view of the subject, I conclude this residue, after the settlement of all debts and expenses, and all legacies being paid, whatever might remain, whether of money on hand at the time of the testator's death, or due him, and that all property of a personal character, of whatever kind, which he could call his at the time of his death, is to be taken as the residue. It is my opinion, therefore, that at any rate, the value of the slave, Adaline, should be applied to ease the residue, and that the chancery court should, if the debts and expenses have been paid out of the residue fund, order that exhaustion to be supplied by the value of the slave *pro tanto.*

That this course is sanctioned by precedent and authority—see 1 Story's Equity, 560, *passim*, side paging; 1 Tucker's Com. 437, 492; and the equity books are full of authorities on this point, under the heads of "marshalling," "assets" and "substitution." This brings me to

that they should be appraised and sold for the payment of his debts—otherwise, the last clause, constituting a residuary legatee, would be nugatory. And the female slave, who was directed in the will to be hired out for four years, having during that time and before she acquired her freedom, borne a child, it was held, that the value of the child should be applied to relieve the residuo out of which the debts and expenses were paid, and should in that way at least inure to the benefit of the residuary legatee, E.

AUGUST TERM,
1838.

the conclusion of this case, which is, that the court below did wrong in dismissing the complainant's bill, and the same ought to be reversed. Judge EDWARDS concurring herein, the same is reversed and remanded.

TOMPKINS, Judge, dissented.