FIRST BAPTIST CHURCH, *Appellant*, v. ROBBERSON.

1. **Validity of Devises and Bequests to Churches under Constitution of 1865.** A devise of land not exceeding one acre to a church or religious society to erect a church upon, was permitted by section 13, article 1 of the constitution of 1865; but a bequest of money to such a society for the purpose of building a church or for the support of a minister was prohibited.

So, it is to the last degree doubtful whether a bequest to such a society to be used for the erection of a female seminary was not also prohibited by that section.

2. ———: PARTY TO SUIT TO ESTABLISH DEVISE. A suit to establish a devise in favor of an incorporated religious society, should be brought in the name of the society, and not in the name of the "board of trustees" through which such societies were required by section 12, article 1 of the constitution of 1865, to manage such land as they were allowed to hold.

3. **Charitable Bequests**: AMBIGUITY OF WILL: PLEADING. Obscurity in the language used by a testator in designating the beneficiary of a charitable bequest will not defeat the bequest; and if the petition in a suit brought to establish the bequest identifies the plaintiff

as the intended beneficiary, it will not, on demurrer, be held bad because of the uncertainty of the will in this particular.

4. **Will, Suit to Establish**: PROPER PARTIES PLAINTIFF. One who claims to be the beneficiary intended by a will may maintain a suit to construe the will.

5. **Equity**: PLEADING. A petition in a suit to obtain a construction of a will alleged, that a controversy had arisen between the plaintiff (a legatee) and the executor respecting his duties and plaintiff's rights under the will, that doubts had arisen as to its proper construction, and that danger to plaintiff's rights was apprehended unless equity interfered and gave proper directions to the executor; *Held*, that the petition was good on demurrer.

6. **Jurisdiction of Probate and Circuit Courts of Greene County, in the Construction of Wills.** The probate and common pleas court of Greene county was by law, (Local Acts 1855, p. 58, § 4,) invested with " exclusive original jurisdiction * * to hear and determine all disputes and controversies whatsoever respecting wills, the right of executorship, administration or guardianship, or respecting the duties or accounts of executors," &c. *Held*, that the jurisdiction so conferred did not embrace the powers of a court of chancery, and, therefore, a suit to construe a will and to ascertain the rights of the devisees and legatees and the duties of the executor thereunder, was not cognizable in the probate and common pleas court, but only in the circuit court, and this whether administration was still pending in the former court or not. HOUGH and HENRY, JJ., dissenting.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

REVERSED.

The plaintiff filed a petition in the circuit court of Greene county which was substantially as follows: That plaintiff is a corporation duly incorporated and organized under the general laws of the State of Missouri; that on the 26th day of October, 1870, Harriet Bailey made and published her last will, as follows: * *

Second. I hereby bequeath the sum of $5,000 to be expended in the erection of a church edifice in the city of Springfield, to be used and enjoyed by the Baptist society forever as a church. It is my will that said money be ex-

pended under the direction and management of three discreet persons, to be appointed by said Baptist church. I further devise to said society, or church, one acre of land to be selected by three discreet persons, to be appointed as aforesaid, upon which said church edifice shall be erected, the said land and church edifice to remain the property of the Baptist church or society in the city of Springfield forever. I also hereby bequeath the sum of $1,000 to said Baptist church in the city of Springfield, in trust for the following uses, to-wit: The proper officers or trustees of said church shall take charge of said sum of $1,000 and shall keep the same at interest on good securities, and shall apply the annual interest arising therefrom to the support of the minister for the time being in charge of the church to be erected as hereinbefore provided for.     *     *

Sixth. It is my will, and I hereby devise and bequeath all the balance of my estate, both real and personal, to the Baptist church in the city of Springfield, upon the following conditions and for the following uses and purposes, to-wit: To be used for the erection of a seminary of learning for the use of misses and young ladies exclusively, this devise and bequest not to take effect until the said church shall raise in addition to the amount herein bequeathed and devised, to be used for the same purpose, twice the amount of this bequest or devise. My executor is hereby directed to pay over to such discreet persons, not less than three in number, as such church may appoint for the purpose, the amount of this legacy, as soon as the same can be ascertained and collected, if at that time he shall be satisfied that said church has received twice that amount from other sources, to be used in the erection of a seminary, as hereinbefore provided, in Springfield.

Seventh. In case the money to be raised by the Baptist church, in order to comply with the conditions of the legacy mentioned in the last preceding item, is not secured in good faith within one year after the amount of this legacy shall be ascertained, then it is my will that all the

property, both real and personal, mentioned in item sixth, shall go to Dr. E. T. Robberson, &c., &c.

That on the 7th day of July, 1873, said Harriet Bailey departed this life; that on the 17th day of October, 1873, said will was duly admitted to probate before the probate and common pleas court of said Greene county, and the respondent, E. T. Robberson, the executor named in said will, duly qualified as such executor and thereafterward entered upon the discharge of his duties as such executor, and has ever since been and was at the commencement of this suit the legal and acting executor of said will; that the other defendants are legatees and devisees under said will and legal heirs of said testatrix; that the plaintiff is the Baptist church mentioned in said will; that there are conflicting claims set up to the same property under the provisions of said will, and that the rights of the plaintiff under and by force of each of the before named clauses and items of said will is the subject of controversy with the executor of said will; that appellant is in doubt as to how and by whom the acre of land devised to plaintiff in the second item of said will shall be selected; and when and by whom the amount of the devise and bequest to plaintiff in the sixth item in said will shall be ascertained and determined; and when and to whom said last named devise and bequest in said item sixth in said will shall be paid over by said executor; and when the year mentioned in the seventh item of said will will commence, within which the appellant is to secure from other sources to be used in the erection of the seminary the amount mentioned in the sixth item of said will; that said testatrix died leaving real estate of the value of $20,000, describing it; and personal property of the value of $40,000. And praying the advice and direction of the court as to the proper and just construction and effect of the several clauses of said will and the rights of the devisees and legatees under the same, and the duties of the executor in the performance of the trusts by force of said will.

The defendants filed a demurrer to this petition, setting up the following grounds of objection: 1. The petition states no facts entitling plaintiff to equitable relief. 2. No facts are stated in said petition showing uncertainty or ambiguity in any of the provisions of said will under which plaintiff can claim. Nor does it appear that there is any ambiguity, doubt or uncertainty in the meaning of any of the provisions of said will requiring the aid of a court of equity to construe them. 3. It is not averred in said petition, nor does it appear that plaintiff at the date of the execution of said will had any legal existence or being. 4. If plaintiff has any interest at all under said will, she has a complete and adequate remedy at law. 5. The devisees and legatees of the said will having a complete remedy at law, this court has no jurisdiction at their suit or at the suit of any one of them to construe said will. 6. No facts are stated by plaintiff in her petition authorizing a construction of said will at her suit. 7. The said bequest of $5,000 to erect a church edifice, named in the first clause of said will, is void. And the said bequest of $1,000 to said Baptist church in the city of Springfield, named in second clause of said will, is likewise void. And the residuary clause of said will, devising and bequeathing the residue of testatrix's property to said Baptist church, is also void, and no suit can be maintained to construe any of said clauses. 8. There is no doubt, ambiguity or uncertainty of and concerning the said devise of one acre of land, named in the first clause in said will, requiring the aid of a court of equity. 9. Because this court has no original jurisdiction over this suit.

The demurrer was sustained and final judgment entered for the defendant. Plaintiff appealed. The case was twice argued in this court.

*C. W. Thrasher* and *H. C. Young* for appellant.

*C. B. McAfee* and *Chas. A. Winslow* for respondent.

## On Rehearing.

### I.

SHERWOOD, C. J.—Upon more mature reflection, I am satisfied that the view expressed by us in a former opinion,

1. VALIDITY OF DE- VISES AND BE- QUESTS TO CHURCH- ES UNDER CONSTI- TUTION OF 1865.

that the bequest in Harriet Bailey's will, whereby she bequeathed $5,000 to be used in erecting a church edifice on an acre of ground also devised by the will to the Baptist church or society in the city of Springfield, was a valid bequest, was an erroneous, though plausible, view of the subject.

The 13th clause of the 1st article of the constitution of 1865 prohibits, in express terms, every gift, sale or devise of land, and every gift, sale or bequest of goods and chattels for the use, benefit or support of any minister, &c., or of any church, &c. The only exception made to the above comprehensive prohibitions is that exception which permits the gift, sale or devise of the quantity of land mentioned in the next preceding clause of the article. By that clause, one acre of ground is the limit in quantity of land which any church may hold in a town or city. With the wisdom or unwisdom of these constitutional provisions we have no concern. That was a matter confided to the framers of the constitution of 1865, and we have only to obey its behests. One thing which greatly contributed to our error on this point, on a former occasion, was our unwillingness to believe that the framers of that constitution, while permitting the donation or devise of an acre of ground to a church organization, would yet, at the same time, absolutely cut off and prohibit every gift, bequest or devise, whereby such donation or devise could be rendered of any benefit to the church or religious society to which it might have been made. But we are now fully convinced that the bequest of $5,000 for the purposes of a church building, and the bequest of $1,000 for the support of a minister, which last we held invalid before, must both oc-

cupy the same position, and be held alike obnoxious to the
provisions of the constitution before mentioned, thus falling
within the ruling made in *Kenrick v. Cole*, 61 Mo. 572, and
*Schmucker's Estate v. Reel*, 61 Mo. 592.

## II.

It is altogether unnecessary to discuss the validity or
invalidity of the 6th clause of the will of the testatrix rela-
tive to the establishment of a seminary for young ladies,
for the reason that it is not averred in the petition, but
that the amount of the bequest specified therein has been
ascertained and collected, the year elapsed after such as-
certainment and collection, and yet the sum required to be
secured by the church within that time, in order to obtain
the legacy, not so secured.    It would, therefore, be useless
to discuss what would be the rights of the plaintiff in the
premises, when it does not appear whether the conditions
have been performed, upon whose performance alone those
rights must depend.    The remark, however, may be ven-
tured, that, even if the averment just mentioned had been
made, showing a full compliance with the conditions speci-
fied, it is to the last degree doubtful whether the constitu-
tional provisions before quoted would not be applicable in
this instance also, thus preventing the plaintiff from taking
the bequest, not for its own benefit, but for merely a char-
itable or educational purpose.

## III.

I have no doubt as to the legal capacity of the plaintiff
to maintain this action.    The petition alleges the incor-
2.——: party to suit poration of the plaintiff, and the demurrer
to establish de-
vise.            admits the truth of such allegation.    The
corporate name was, therefore, the obviously proper one in
which to bring suit.    *North St. Louis Christian Church v.
McGowan*, 62 Mo. 279.    And there is nothing in clause 12
of article 1 of the constitution, *supra*, which forbids this
view.    The fact that, under the provisions of that clause,

a board of trustees is to transact the financial business of the ecclesiastical corporation does not change the rules of pleading, nor the authority of well-settled precedents. The same line of reasoning which would forbid the church from suing in its corporate name would also prevent the " board of trustees " from doing the like as such board, for the obvious reason that no such power is conferred by the clause just referred to, and consequently, according to the defendant's theory, cannot exist.

## IV.

Nor is it to be doubted that, under the pleadings, the plaintiff is the beneficiary under the will. This the petition alleges; this the demurrer admits. And even if the language of the bequest were somewhat obscure, such obscurity would not be suffered to defeat the purpose of the testatrix as to the one acre of ground, this being the case of a recognized charity. *Schmidt v. Hess*, 60 Mo. 591, and cases cited.

3. CHARITABLE BEQUESTS : ambiguity of will: pleading.

## V.

And it was competent for the plaintiff, in this instance, to take the initiative and institute the present proceedings, though this is usually done by the executor or trustee, by a bill in the nature of a bill of interpleader; and this for his own protection. I Redfield on Wills, 492, and cases cited; Com. Dig. Chy. 3, G. 6; 1 Sto. Eq. Jur., § 544; *Stevens v. Warren*, 101 Mass. 564; *Bailey v. Briggs*, 56 N. Y. 407.

4. WILL, SUIT TO ESTABLISH: proper parties plaintiff.

## VI.

So far as concerns the petition, it is substantially good, since it alleges a controversy to have arisen between the plaintiff and the executor, respecting his duties and plaintiff's rights under the will, and that doubts have arisen as to its proper construction, and that danger to those rights is apprehended, unless equity interfere and give proper directions to the executor.

5. EQUITY: pleading.

## VII.

I shall next discuss whether the circuit court had juris-
diction of the cause.    Under the law of it organization,
6. JURISDICTION OF
PROBATE AND CIR-
CUIT COURTS OF
GREENE COUNTY,
IN THE CONSTRUC-
TION OF WILLS. (Loc. Acts, 1855, p. 58, § 4,) the probate and
common pleas court of Greene county has
exclusive original jurisdiction in all cases
relative to the probate of last wills and testaments, grant-
ing letters testamentary and of administration,       *       *
and the settlement and allowance of accounts of executors,
administrators, guardians and curators, and       *       *
to hear and determine all disputes and controversies what-
soever respecting wills, the right of executorship, adminis-
tration or guardianship, or respecting the duties or ac-
counts of executors, administrators, guardians or curators,
*       *       to hear and determine all disputes and other
proceedings instituted against executors and administra-
tors, upon any demand against the estate of their testator
or intestate, etc., etc.    The statute creating the probate
and common pleas court of Greene county differs in no es-
sential particular from the statutes at large respecting the
jurisdiction of county courts, which statutes in relation to
the probate jurisdiction of such courts have been on the
statute book since 1825.

In *Miller v. Woodward*, 8 Mo. 169, where no final set-
tlement had been made, in commenting upon similar lan-
guage to that above quoted, Mr. Justice NAPTON, speaking
for the court, held that such language did not oust the cir-
cuit court of its chancery jurisdiction to establish a demand
against an estate, or to restrain, by injunction, the admin-
istrators of that estate from making distribution, nor pre-
clude that court from affording to the complainant, a
surety, equitable relief by substituting him in the place
and stead of the creditor, as to all securities, funds, liens
and equities which the latter possessed ; and that such sub-
stitution could only be recognized and accomplished in a
court of equity ; and this upon the ground of the demand

being purely equitable. And in *Clark v. Henry's Admr.*, 9 Mo. 340, *Miller v. Woodward, supra*, is mentioned with approval by the same judge who delivered the opinion in each case, and the original and ancient jurisdiction of courts of equity, so far, at least, as concerns proceedings analagous to the present one, undisturbed by statutory provisions, or modern usage in courts of law, fully and forcibly maintained. The case of *Overton v. McFarland*, 15 Mo. 312, enunciates nothing to the contrary of the cases just cited. The only point in judgment there was that the powers conferred on the county court, by the statutory provisions already quoted, were not absorbed by reason of the circuit court being possessed of a general control over executors, administrators, etc. It is scarcely necessary to say that the maintaining of the present proceeding by no means depends upon a denial of that doctrine.

The powers invoked here are not within the scope, grasp or jurisdiction of probate courts; but powers possessed alone by courts of equity—possessed independent of and long anterior to the existence of the statute mentioned —possessed for the beneficent purpose of affording relief where no adequate redress can be afforded under the ordinary course of legal procedure. Now it has been determined that probate courts in this State possess no chancery powers. *Presbyterian Church v. McElhinney*, 61 Mo. 540. But it is only in a tribunal possessing such powers that an executor or administrator can file a bill in the nature of a bill of interpleader, in order to have his duties defined and his pathway marked out by the decree of a court fully competent to adjudicate upon the complex questions which sometimes arise in the course of administration. And the reason why a court of equity is the only tribunal thus competent is because a court of law can deal alone with past occurrences, while the peculiar province and distinguishing feature of the court of equity is to administer preventive justice; to entertain measures of precautionary relief; to forestall wrongs or anticipated mis-

chief; and in affording its comprehensive and wide-reaching relief, extend its arm *in futuro;* arrest the progress of impending evils and thwart the threatened danger. Besides, a court of equity ought to entertain jurisdiction of this cause, because capable to avoid a multiplicity of suits, which a court of law would be compelled to entertain at the instance of each dissatisfied suitor interested in the subject matter of the will. I think it may be safely affirmed that no instance can be found in the books where a court of law, a court merely of statutory origin, has been adjudged the possessor of such powers.

Doubtless the Legislature might confer such powers on probate courts, but doubtless our Legislature never has. This is shown not only by the authority just referred to, but by the case of *Schulter's Admr. v. Bockwinkle's Admr.,* 19 Mo. 647, a case which arose in St. Louis county. In that instance, it was ruled that the special statutory proceeding against an executor or administrator, under the provisions of section 36, page 148, R. S. 1845, for specific performance, could be maintained in the county court only when the contract was in writing; otherwise, the proceeding must be had " under the general law," *i. e.*, in the circuit court, which alone could enforce specific performance when the contract rested in parol. And the Legislature must evidently have been of the same opinion as to the jurisdiction of county courts, or else they would not have been at the pains to have conferred, in a single instance and in one particular way, equity powers upon such courts, if those courts already possessed a general equitable jurisdiction. So, also, in the case of *Mead v. Jennings*, 46 Mo. 91, it was held that, if the executors of a will failed to act as required by the testatrix, a complete remedy was to be had by filing a bill, not in the county court, but in equity, to compel them to execute the trust. The above are only a few of the many cases which might be cited as showing what hitherto has not been deemed doubtful, that circuit courts, or those on which such jurisdiction was expressly

conferred by the law of their organization, were the only *fora* capable to administer equitable relief.

I am aware of but two instances where the attention of this court has been called to a proceeding like the present; that is, a bill to construe a will. Those cases are *Collier's Will*, 40 Mo. 287, and *Jamison, Exr. of Bell, v. Hay et al.*, 46 Mo. 546. In the first instance, the proceeding was instituted by the trustees mentioned in the will; whether they were also executors does not appear. In the second instance, the application was by the executor as such. Distinguished counsel were, however, employed in each instance, and the matters incident to the construction of wills learnedly and exhaustively discussed; but it was not for a moment questioned that the circuit court, sitting as a court of equity, was the only *forum* competent to give instructions to those applying therefor how safely to dispose of the vast property devised and bequeathed in the first instance mentioned, and of the by no means inconsiderable estate devised and bequeathed in the second instance.

But it is suggested by counsel, that Collier's case differs from this, in that it does not appear, but that the general administration had in that case been finally closed. I am altogether unable to see how that circumstance affects in the slightest degree the point under discussion, for if the jurisdiction of the probate and common pleas court, as to all matters pertaining to the " duties or accounts of executors, &c., and as to all disputes and controversies whatsoever respecting wills," is " original and exclusive," then it must needs follow that the only jurisdiction which the circuit court could possibly exercise in such matters would be an appellate jurisdiction; and this regardless of the question, whether the administration was pending in the probate court or previously determined; for it cannot, with any show of reason, be contended that the final winding up and settlement of an estate in the probate court, would *ipso facto*—would by operation of law develop a new juris-

22—71

diction in the circuit court, never existing before, until that hour. So that the position of defendant's counsel will be found ultimately to resolve itself into this: That you cannot invoke the equitable interposition of the circuit court, while the administration is in progress, because the jurisdiction of the probate and common pleas court is original and exclusive; nor after final settlement, for the self same reason—in a word, that in no probate matter will equity take cognizance or afford relief. I am unwilling to accept such a theory, or such, its inevitable consequences.

Granting, however, for the sake of argument, that the jurisdiction of the probate and common pleas court is as extensive as counsel claim; granting that we must stick in the bark of a literal construction, still this case does not fall within that jurisdiction, and for this obvious reason: That the duties of this executor, Robberson, are not conferred by the statute, but by the will. In the case of *Coil v. Pitman's Admr.*, 46 Mo. 51, an administrator with the will annexed, under the power conferred by that instrument, sold land, but failed to make a deed to the purchaser, and the latter applied to the county court for specific performance, which was refused. This court, after quoting the statutory provisions before noted, held that, as the specific power to sell was conferred by the will, and had no existence in consequence of statutory law, the administrator acted independently of the county court, and was not amenable to it for the performance of any duty respecting the sale; that, when the authority to sell was derived from statutory provisions, a different rule prevailed, and the administrator became subject to the control of the court, and its full "supervisory power and jurisdiction in all matters touching the premises;" but that, since the will in that instance bestowed the power, the only resort of the purchaser for specific performance was to a court of chancery; that the statute had not conferred such jurisdiction on the county court, and that nothing in favor of the jurisdiction of that court was to be taken for granted or given by im-

plication.   It is quite evident from the case just cited that only matters resting in the ordinary routine of administration were held exclusively cognizable by probate courts. Tested by the rule just announced, it will be found that, as the powers in the present instance are conferred by the will, and not by the statute, the probate and common pleas court has no jurisdiction, and the only proper resort of plaintiff was to the present method of procedure, and in the circuit court.

## VIII.

If it is established that the circuit court has jurisdiction, then no more difficulty can attend the enforcing of the decree which it may render in this than in any other cause whatsoever.   Jurisdiction existing, the power to enforce and effectuate whatever may be done pursuant to such jurisdiction follows as a necessary incident.

## IX.

It would seem that the devise as to the acre of ground on which to build a church was sufficiently definite to obviate the necessity of asking the construction of that clause of the will, but the petition alleges and the demurrer confesses that a controversy has arisen between the plaintiff and the executor respecting that devise.   For this reason alone, the judgment will be reversed and the cause remanded.   All concur, except HOUGH and HENRY, JJ., who dissent.

HOUGH, J., DISSENTING.—I dissent from the opinion of the majority on the question of jurisdiction.   I do not presume it will be contended by any one that the probate court is a court of chancery, or a court exercising general equity powers, and in that sense the decision in *Presbyterian Church v. McElhinney*, 61 Mo. 540, is correct ; but there can be no question that, since the year 1825, probate courts in this State have been invested with, and have lawfully exercised in the settlement of estates, powers and jurisdiction

formerly exercised only by courts of chancery. The simple
reading of the statute quoted in the opinion of the majority,
together with the administration act, is sufficient to show
this. But it has also been expressly and repeatedly so de-
cided by this court.

In *Jackson v. Jackson*, 4 Mo. 210, a bill was filed on the
chancery side of the circuit court to establish and carry
into effect the provisions of a lost will. This court held
that, under the act of 1825, (which is substantially the same
as that now under consideration,) the probate court had
exclusive original jurisdiction of the matters set forth in
the bill, and that the court of chancery had no concurrent
jurisdiction with the probate court. Judge Tompkins, who
delivered the opinion of the court, said : " The probate
court (now county court) can in this case grant as much
relief as a court of chancery." In *Miller v. Woodward*, 8
Mo. 169, to which reference will be made hereafter, and in
which the whole field of probate jurisdiction was critically
examined, Judge NAPTON conclusively shows that the entire
jurisdiction formerly exercised by the ecclesiastical and
chancery courts, in the settlement of estates, was vested by
statute in the probate courts. In *Miller v. Iron County*, 29
Mo. 122, Judge NAPTON, in commenting upon the nature
and extent of the probate jurisdiction conferred upon the
county court, said: " In this field of jurisdiction, the court
is a branch of the State judiciary, exercising, in fact, a
jurisdiction originally found in the chancery courts and
ecclesiastical courts of England, and conferred here by
statute upon these county tribunals." *Titterington v. Hooker*,
58 Mo. 593, announces precisely the same doctrine advanced
in *Miller v. Woodward*, *supra*, though the latter case was
not cited in argument nor referred to in the opinion. In
*Pearce v. Calhoun*, 59 Mo. 271, the case of *Titterington v.
Hooker* was affirmed, and Judge Wagner, who delivered
the opinion of the court, used the following language :
" Our probate courts were established, with extensive pow-
ers and jurisdiction, for the purpose of doing everything

necessary to the full and final administration of an estate. Both real and personal property are under their control for the payment of debts. They possess about the same powers formerly exercised in England by the ecclesiastical and chancery courts." In *Ensworth v. Curd*, 68 Mo. 282, it was expressly said that, in the settlement of a copartnership dissolved by death, the probate court exercised the powers of a court of chancery.

So that the question of jurisdiction before us is not to be determined by a reference to Redfield on Wills, or Comyn's Digest, or Story's Equity, or the decisions of other states, but to the statutes of this state conferring jurisdiction upon the probate courts and the decisions of this court made in reference thereto. Section 544 of Story's Equity, cited in the opinion of the majority, to show that an executor or administrator may go into a court of equity for the purpose of adjusting the claims of creditors, and having a final decree settling the order and payment of the assets, when he finds the affairs of his testator or intestate so much involved that he cannot safely administer the estate, does not state the law as it exists in this state. Such was the law in a system of jurisprudence under which courts of chancery could take the administration of estates out of the spiritual courts and proceed to final settlement and distribution. No one, I imagine, will contend that the circuit court, which with us is the only court of general equity jurisdiction, has a right, on any pretext, or in any contingency, to assume original jurisdiction of the administration of estates. The decisions in Massachusetts on this subject are not applicable here. In that state, equity jurisdiction in all cases of trust arising in the settlement of estates is expressly conferred by statute on the supreme court. *Hooper v. Hooper*, 9 Cush. 127, R. S., chap. 81, § 8; *Treadwell v. Cordis*, 5 Gray, 341, R. S. 1836, p. 500, § 8. For a similar reason, the decisions in New York are not authority here. In *Seymour v. Seymour*, 4 John. Chy. 409, it was

held that courts of equity have concurrent jurisdiction with courts of probate in the settlement of estates.

In this state, whatever jurisdiction is conferred upon probate courts by the act in question, is exclusive. Such is the language of the statute. And, as the probate court has jurisdiction to hear and determine " all disputes and controversies whatsoever respecting wills,    *    *    or respecting the duties of executors," such jurisdiction must necessarily be exclusive while the administration is pending in such court. This jurisdiction is conferred upon the probate courts solely for the purpose of administering estates—that is, for their settlement and distribution. And, when the administration is ended, and the property of the estate has been distributed to those who are entitled to it, the jurisdiction of the probate court over the parties interested, as well as the property they have received, alike ceases. Thereafter the rights of heirs, devisees and grantees, and the duties of trustees who have received property through the administration proceedings, are subject to adjudication in the courts of general jurisdiction. And it may well be that when, pending the administration, trustees have received property clothed with a trust, controversies between them and their *cestuis que trustent* would be properly heard and determined in the circuit courts; for, as to such property, the administration would in reality be ended; as much so as if the estate had been finally settled, there being nothing further for the probate court to do in reference thereto. Such I understand to be the case of *Collier's Will*, 40 Mo. 287.

In the case of *Brant's Will*, 40 Mo. 266, which was a proceeding by a devisee against the executor, involving the construction of the will, this court said: " There was some doubt as to whether the court had jurisdiction over the matter before the close of the administration, and it is believed that it was for that reason that the petition was dismissed; but as the same subject is again pending and the parties are desirous of having the will construed, we will

waive that point and examine the questions arising in the case." In the case of *Jamison, Exr., v. Hay*, 46 Mo. 546, no question was made as to the jurisdiction of the court, and, as the record shows, all of the forty defendants, except one, appeared and submitted the construction of the will to the court. As Judge Wagner, who delivered the opinion in the case of *Brant's Will*, also delivered the opinion in this case, he doubtless did so for the same reason given in *Brant's Will*, waiving the question of jurisdiction.

As the opinion of the majority is chiefly based upon the decision in *Miller v. Woodward, supra*, and as that decision is, as I conceive, misapprehended and misconstrued, it may be well to state what that case was and what was decided. Miller, the complainant, was surety for one Manzey, on a collector's bond. Manzey died intestate and insolvent; the defendants, Woodward and Thornton, were his administrators. The state sued Miller and recovered judgment against him as surety for $264, which judgment Miller paid, his co-sureties being insolvent. Distribution of the assets among the creditors had been ordered by the probate court. Miller filed a bill in the circuit court, stating the foregoing facts and praying that the administrators be enjoined from making distribution, and that they be required to pay to him the amount paid by him to the state. A general demurrer to the bill was sustained by the circuit court.

There was no controversy as to the jurisdiction of the circuit court over Miller's demand against the estate of Manzey, because it exceeded the sum of $100, and the statute expressly provided that the circuit court should have concurrent jurisdiction with the county court of all suits against executors and administrators when the demand exceeded $100. The question on which Judges NAPTON and Scott divided was, whether, when Miller went into the circuit court to establish his demand, he should, in the first instance, under the practice then prevailing, have taken the chancery side, or the law side of that court. Judge Scott

was of opinion that he should first have established his claim at law.

The opinion of the court, as delivered by Judge NAPTON, was, that Miller's demand was an equitable one, and if relief were sought outside of the county court it could only be had in a court of equity, and that Miller properly sought the chancery side of the circuit court. But both judges were of opinion that the demand could have been established in the county court. Of course there could have been no difference of opinion on that point, for by the express language of the statute, the demand was within the concurrent jurisdiction of the county court and the circuit court. Judge NAPTON said : " The amount involved places the case within the concurrent jurisdiction of the county and circuit courts, and the demand being purely equitable, it falls to the chancery side of the circuit court." Judge Scott said : " The demand exceeded $100, the county court and circuit court had concurrent jurisdiction over it, and the party might have established it in either court. It is, however, a legal demand, and if he goes into the circuit court, he must take the common law side of that court." This case, it will be seen, furnishes no support whatever to the opinion of my associates ; on the contrary, it is directly in the face of that opinion.

Instead of being authority for the statement that, because Miller's demand was " purely equitable," it could only be established in a court of equity, it is an express authority that it might have been established in the county court as well as on the chancery side of the circuit court, and it necessarily follows that but for the clause of the statute giving the circuit court concurrent jurisdiction with the county court, the county court would have had exclusive jurisdiction of the demand. If Miller's demand had been less than $100, although it was " purely equitable," the county court would have had exclusive jurisdiction. But this is not all that was decided by that case. In consequence of an erroneous decision as to the concurrent ju-

risdiction of the probate and circuit courts made in *Erwin v. Henry*, 5 Mo. 469, Judge NAPTON, in his opinion, enters upon a most elaborate review of the whole question, and after stating that the powers exercised by the chancery courts in England and those of the United States where the English system prevailed, grew out of the same jurisdiction of the ecclesiastical courts, makes the following observation: "It is thus seen, that the principal reason given by the equity courts of England for their assumption of such extensive jurisdiction, both concurrent and exclusive, over executors and administrators, and the settlement of estates, has been for the want of an efficient and adequate remedy at law. These defects, it is also seen, in the power of the English ecclesiastical courts do not, to any extent, exist in the organization or powers of our courts of probate. It is true, that where courts of equity have once acquired jurisdiction, in consequence of the want of remedy elsewhere, the subsequent provision of a remedy by the legislative department has been held not to divest chancery of its jurisdiction, unless exclusive words are used in the act; it is better to increase the jurisdiction of courts than to limit them; for thereby a choice of tribunals is left to suitors. But this principle has no application in this case; for the legislature have used, as we have seen, exclusive words and the county courts and courts of chancery cannot be concurrent, except so far as they are made concurrent by the 7th clause of the 15th section. By that section it has been seen that the circuit courts have concurrent jurisdiction with the county courts in all suits against executors and administrators, where the demand exceeds $100."

In *Overton v. McFarland*, 15 Mo. 312, Judge Gamble in discussing this subject used the following language: "In *Miller v. Woodward and Thornton*, 8 Mo. 169, so much of the decision in *Erwin v. Henry*, as maintained the jurisdiction of a court of equity in the matters specified in the clauses of the section giving jurisdiction to the county

courts was overruled.    It was there held that all the clauses of the section, except the 7th, (which relates to the allowance of demands against the estate,) were exclusive, and that the general control over executors, administrators, guardians, &c., conferred upon the circuit court by the 6th clause of the 8th section of the act, was not to be understood as interfering with the grant of exclusive original jurisdiction made to the county courts.    The case of *Clark and wife v. Henry, Admr.*, 9 Mo. 340, which is the same case in which the first decision was made, asserts the jurisdiction of a court of equity to determine a case of alleged waste and mismanagement of an estate after it has been finally settled in the county court, and when of course the jurisdiction of that court has been exhausted.        *

*        There is nothing in any decision that has been made, that will warrant the interference of a court of equity in a case like the present.    Here the administration, (as must be intended from the petition,) is still in progress before the county court, and that court is competent to hear and determine the controversy respecting the duty of the administrator in relation to the property mentioned in the petition, and has exclusive original jurisdiction of such question."

Pending administration in the probate court, no court has authority to advise it how to proceed, or to interfere with its jurisdiction.    Under the statute cited, it has exclusive jurisdiction to construe wills for the purposes of the administration, and to direct executors as to their duties; and, if it errs, an appeal lies to the circuit court.    The power to construe wills must, in the very nature of things, be exercised by the probate court in the settlement and distribution of the estate of every testator.    Numerous cases in which this power has been exercised appear in our reports.    In the case of *Hamilton, Exr. of Taylor, v. Lewis*, 13 Mo. 184, the construction of a will was originally sought in the county court.    In *Dyer v. Carr's Exr.*, 18 Mo. 246, the opinion of the probate court was formally taken as to

the true construction of a will, but, as no order was made by that court to carry its construction into effect, this court said no appeal would lie from its decision. In *Overton v. Davy's Exr.*, 20 Mo. 273, the probate court construed the will of Davy and ordered distribution accordingly, and that judgment was affirmed. The opening paragraph of the opinion of this court is as follows: "The proper construction of the will of Cornelius Davy is the only point in this case for the consideration of this court." In *Rose v. Mc-Hose's Exrs.*, 26 Mo. 590, a construction of the will and an order of distribution based thereon were asked of the probate court, and its judgment was affirmed. In *Bryant v. Christian*, 58 Mo. 100, construction of will and order of distribution were asked of the probate court, and its judgment was affirmed. In *Allison's Exr. v. Chaney*, 63 Mo. 279, the will was construed and an order of distribution made accordingly, and its judgment was affirmed.

Section 49 of the chapter on Wills is as follows: "All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." What court is so directly concerned in the execution of last wills as the probate court? And yet it is said that, although the probate court is to have due regard to the directions of the will, and although it has exclusive original jurisdiction, not only of the probate of wills, but of all disputes and controversies whatsoever respecting wills and the duties of executors, still it has no authority to construe a will.

It is unnecessary to make any observations on the case of *Schulter's Admr. v. Bockwinkle's Admr.*, 19 Mo. 647. It follows the statute, and furnishes no argument to either side on the question now before the court. The remark of Judge Wagner in *Mead v. Jennings*, 46 Mo. 91, that "if the executors should neglect or fail to act as required by the testatrix, the plaintiffs have a complete remedy in equity by filing a bill to compel them to execute the trust,"

referred to duties imposed upon the executors as trustees, after the final settlement and distribution of the estate, as an examination of the will in that case will show. That case, therefore, has no bearing on this. Judge Wagner never intended to assert that the probate court has no power to compel the executor to make distribution according to the provisions of the will. In the case of *Coil v. Pitman's Admr.*, 46 Mo. 51, the duty of the administrator to make a conveyance arose out of his contract with the plaintiff, and not out of the will, and the circuit court was, therefore, the proper forum in which to enforce that contract; as much so as if the contract had been made by a devisee under the will.

I am of the opinion that the probate court of Greene county had exclusive original jurisdiction to determine the validity of the devises in the will of Mrs. Bailey, and to direct the executor as to his duties under said will. *Kenrick v. Cole*, 46 Mo. 85.

I am further of the opinion that neither the circuit court nor this court has any semblance of authority in a proceeding like the present to pass upon the validity of a will which has been proven in the probate court. If parties wish to contest the validity of a will which has been proven in common form, or pray to have a will proved which has been rejected, they must proceed under the 29th section of the chapter on Wills. *In re Duty's Estate*, 27 Mo. 43. The judgment of the probate court is conclusive, and it can only be annulled in a direct proceeding instituted for that purpose under the statute. *Dilworth v. Rice* 48 Mo. 124; *Banks v. Banks*, 65 Mo. 432.

The judgment of the circuit court sustaining the demurrer and dismissing the bill should, in my opinion, be affirmed.

HENRY, J., DISSENTING.—The plaintiff, a legatee and devisee under the last will and testament of Harriet Bailey, deceased, filed a petition in the circuit court of Greene

county against the other legatees, devisees and the heirs-at-law of the deceased, and the executor of her last will and testament, alleging that conflicting claims are made by different parties to the same property, and that plaintiff is in doubt as to the proper construction of the will, and as to the rights and interest of plaintiff in the property and estate devised and bequeathed to plaintiff, and concludes by asking the advice and direction of the court as to the proper construction and effect of the several clauses and items of the will under which said doubts arise. It also appears from the petition that the administration of the estate is pending in the probate court of Greene county.

By section 7 of the act in relation to courts of record, (Wag. Stat. 440,) the several county courts, and the probate court of Greene county by the act establishing it, "shall, when not otherwise provided by law, have exclusive original jurisdiction * * to hear and determine all disputes and controversies whatsoever respecting wills, the right of executorship, administration and guardianship, and respecting the duties and accounts of executors, administrators and guardians," &c. By the same section, in the same language, exclusive original jurisdiction is conferred upon those courts, in all cases relating to the probate of wills, the granting letters testamentary and of administration, and repealing the same; appointing and displacing the guardians of orphans, minors and persons of unsound mind; in binding out apprentices; to hear and determine all suits and other proceedings instituted against executors or administrators upon any demand against the estate, when such demand shall not exceed $100. The jurisdiction to hear and determine all controversies whatsoever respecting wills and the duties of executors and administrators is as exclusive as the jurisdiction on any other subject mentioned in the section. The petition states a case expressly within the exclusive jurisdiction conferred upon county courts by the 7th section.

The exclusive jurisdiction of the probate courts and

county courts with probate jurisdiction is recognized in the following cases: *Graham v. O'Fallon*, 3 Mo. 507; *Jackson v. Jackson*, 4 Mo. 210; *Miller v. Woodward*, 8 Mo. 174; *Overton v. McFarland*, 15 Mo. 312. But, aside from all authority on the subject, the statute, plainly enough, not only confers authority on the probate court to construe wills, but gives it exclusive jurisdiction over all disputes and controversies respecting them and respecting the duties of executors and administrators pending the administration of the estate in that court. Here the circuit court was only asked to construe the will for plaintiff and direct the executor as to his duty under the will. Suppose the probate court should entertain a different view as to the construction of the will and the duty of the executor? It has the control of the estate, and is bound to make all necessary orders for its administration. Where does the circuit court get its authority to control or instruct the probate court in such matters? By the express, unequivocal terms of the statute, the probate court has original, exclusive jurisdiction to hear and determine all disputes and controversies whatsoever respecting wills and the duties of executors, but it is contended another court has authority to tell that court how to hear and determine those controversies and disputes. The probate court has original exclusive jurisdiction, but the circuit court has the learning, and therefore the authority, to instruct the other how to exercise that jurisdiction.

Does the petition state facts which show that a controversy has arisen with respect to the will? If so, it must be settled in the first place in the probate court. The authority claimed for the circuit court is not conferred by section 2, Wagner's Statutes, 430, giving it a superintending control over county courts and justices of the peace. Appeals lie to the circuit court for the correction of any errors which may be committed by the probate court in the exercise of the jurisdiction conferred upon it by section 7, and in this, and in no other manner, can the circuit court exer-

cise a superintending control over that court as to its judgments, orders and proceedings under that section, and the exercise of a superintending control over that court in any other manner must relate to matters not embraced in that section. If the authority claimed for the circuit court in this case exists under section 2, then it may interfere and direct justices of the peace and probate courts how to proceed in any case pending in those courts; how to construe written instruments offered in evidence; how to decide questions as to the admissibility of evidence or the competency of witnesses. Courts of law are as competent as courts of equity to construe wills. The mere construction of wills is not a ground of equity jurisdiction. In a suit in equity, that court construes a will when it becomes necessary in the progress of the trial. So does a court of law, but where or when was it ever held that, in a cause pending in a court of law, a court of equity could determine for it how a will should be construed ? The supreme court, by the constitution, section 3, article 6, has "a general superintending control over all inferior courts," but an application to this court to construe a will for a circuit court, in which a cause originating under the will was pending, would certainly not be listened to with much favor.

But it is said that this is not a controversy respecting a will; that a controversy respecting a will is one in which its execution is questioned, or the competency of the testator to make it is denied, or undue influence in procuring its execution is alleged. This argument overlooks the first clause of the section (7), by which original exclusive jurisdiction is given to the county courts, in all cases relative to the probate of last wills and testaments. The other clause of the section, giving it jurisdiction to hear and determine all controversies whatsoever respecting wills, has a wider scope and embraces all disputes respecting the construction of wills.

It is further contended that the statute has made no provision for bringing into the county court the parties in-

terested, and, therefore, the circuit court must necessarily exercise the jurisdiction herein claimed. By section 17, Wagner's Statutes, 420, all courts have power to issue all writs which may be necessary in the exercise of their respective jurisdictions, according to the principles and usages of law, and by section 8, page 440, " The said (county) court shall, when not otherwise provided by law, have power to award process, and to cause to come before them all and every person    *    *    who, as executors, administrators, guardians, or otherwise, shall be interested or in any way accountable for any lands, tenements, goods or chattels belonging to    *    *    the estate of any deceased person." These sections are a complete answer to the suggestion last noticed.

Nor has the circuit court the jurisdiction asserted under that clause of section 2, Wagner's Statutes, 430, giving it a general control over executors, administrators, guardians, curators, minors, idiots, lunatics and persons of unsound mind. This was distinctly decided in the case of *Miller v. Woodward, and Thornton's Admrs.*, 8 Mo. 175. "It is apparent then, from an examination of the different provisions of our acts, that the general control over executors and administrators given by the 6th clause of the 8th section of the act concerning courts, must be limited in its application to such cases as are not provided for in the more specific distribution of equity jurisdiction, to be found both in our act concerning administration, and in the act defining the jurisdiction and the powers of the county and circuit court. The clause appears to have been inserted through abundant caution. The legislature, notwithstanding the care with which they had devised, in the law of administration, suitable modes by which estates could be settled without the aid of courts of equity, except where the intervention of such courts was expressly authorized, thought proper to invest the courts of equity with this general control over executors and administrators to be exercised where the remedy at law was still inadequate."

The same was equally as clearly held in *Overton v. McFarland*, 15 Mo. 313.

That county court justices are not required to be learned in the law, and are not supposed to be competent to construe wills, are considerations that might be urged upon the legislature against conferring upon those courts the jurisdiction given them by the 7th section; but when the general assembly has seen proper to confer an exclusive jurisdiction upon a judicial tribunal, it is not for this court to say that the judicial officer whom the people may elect to preside there may be incompetent to discharge the duties imposed on him by the law, and, therefore, the law is to be held for naught. If the legislature should see proper to confer exclusive jurisdiction upon justices of the peace, throughout the state, to hear and determine causes involving titles to real estate, the courts might think it unwise legislation, but could not hold the act, therefore, invalid. It is not unconstitutional to assume, in a legislative act, that justices of the peace or other judicial officers, are capable of discharging any judicial function which they may be required by the act to discharge. The probate court can scarcely make an order with respect to the estate of a testator without first construing his will. In every order of distribution it necessarily construes the will.

I think that the circuit court committed no error in sustaining the demurrer to the petition, and that its judgment should be affirmed.